# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG, S.A.,<br><br>    Plaintiffs,<br><br>v.<br><br>MOTOROLA MOBILITY, LLC,<br><br>    Defendant. | Civil Action No. 1:17-cv-01658-CFC |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

                                                  Sean T. O'Kelly (No. 4349)
                                                  O'KELLY ERNST & JOYCE, LLC
                                                  901 N. Market Street, Suite 1000
                                                  Wilmington, DE 19801
                                                  302-778-4000
OF COUNSEL:                           sokelly@oelegal.com

Paul J. Hayes                             *Attorney for Plaintiffs*
Massachusetts State
Bar No. 227,000
James J. Foster
Massachusetts State Bar No. 553,285
Kevin Gannon
Massachusetts State Bar No. 640,931
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100
Email: phayes@princelobel.com
Email: jfoster@princelobel.com
Email: kgannon@princelobel.com

Dated: January 9, 2019

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1
II. UNILOC LUXEMBOURG HAD STANDING. ..................................................... 1
   A. The requirements of constitutional standing. .................................................. 1
   B. Fortress never acquired the right to sublicense as Motorola argues. ............... 3
   C. Fortress's obtaining the right to sublicense would not have deprived Uniloc Luxembourg of constitutional standing. ............................................................... 5
      1. The background to *Mann*. ........................................................................ 5
      2. *Mann* explained there is always a CATEGORY ONE plaintiff. ............ 6
III. THIS CASE SHOULD NOT BE DISMISSED. .................................................... 10

i

# TABLE OF AUTHORITIES

**Cases**

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006) .................................................................................. 8

*AsymmetRx, Inc. v. Biocare Med., LLC*,
   582 F.3d 1314 (Fed. Cir. 2009) ............................................................................. 3, 8

*Azure Networks, LLC v. CSR PLC*,
   771 F.3d 1336 (Fed. Cir. 2014) .................................................................................. 5

*City of Los Angeles v. County of Kern*,
   581 F.3d 841 (9th Cir. 2009) ..................................................................................... 1

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   630 F.Supp. 2d 365 (D. Del. 2007) ........................................................................... 6

*H.R. Technologies, Inc. v. Astechnologies, Inc.*,
   275 F.3d 1378 (Fed. Cir. 2002) ................................................................................ 10

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ................................................................................................... 1

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................... 2

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
   814 F.3d 1343 (Fed. Cir. 2016) ...................................................................... 2, 9, 10

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   240 F.3d 1016 (Fed. Cir. 2001) ........................................................................... 5, 11

*Mindek v. Rigatti*,
   964 F.2d 1369 (3d Cir. 1992) .................................................................................. 11

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007) .................................................................... 1, 3, 5, 7

*Prima Tek II, L.L.C. v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000) ............................................................................. 2, 8

*Propat Intern. Corp. v. RPost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007) .................................................................................. 2

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) .................................................................................. 1

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000) .................................................................................. 5

*Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*,
   587 F.3d 1375 (Fed. Cir. 2009) ................................................................................ 10

*Univ. of Pittsburgh v. Varian Medical Systems, Inc.*,
   569 F.3d 1328 (Fed. Cir. 2009) ................................................................................ 10

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................................................. 2

*WiAV Solutions LLC v. Motorola Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010) ...................................................................................... 2, 9, 10

**Statutes**

35 U.S.C. § 281 ............................................................................................................................. 2

I.      INTRODUCTION

Motorola moves ("Mot.") to dismiss this action for lack of subject matter jurisdiction, claiming neither Uniloc Luxembourg, S.A. ("Uniloc Luxembourg") nor Uniloc USA, Inc. ("Uniloc USA") had constitutional standing on November 15, 2017, when they filed this action. Motorola is wrong.  Uniloc Luxembourg (as well as Uniloc USA) had standing at the time of filing.

Motorola does not argue these entities were the wrong plaintiffs, or that someone else was better situated to file suit.  Rather, Motorola argues that *no one* could bring suit on this patent.  The absurd result Motorola is seeking – that no one has standing to sue it for infringing this patent (or any other of Uniloc's patents) – was foreclosed by *Alfred E. Mann Found. for Sci. v. Cochlear Corporation*, 604 F.3d 1354 (Fed. Cir. 2010) ("*Mann*").

If either plaintiff had constitutional standing at filing, then the Court has jurisdiction, under the time-of-filing rules. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (there is a "longstanding principle that the 'jurisdiction of the Court depends upon the state of things at the time of the action brought'") (internal citations omitted); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005).

II.     UNILOC LUXEMBOURG HAD STANDING.

A.      The requirements of constitutional standing.

Bringing a patent action requires a plaintiff have both constitutional and prudential[1] standing. *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (citing *Warth*

---

[1] Prudential standing requires all persons having a sufficient interest in the patent be named as parties. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).  As the requirement is not jurisdictional, a defect can be cured by adding the missing party. *See*, *e.g.*, *Schreiber Foods,* 402 F.3d at 1203.  But as Motorola has not raised prudential standing, this Opposition will not discuss it further.

1

*v. Seldin*, 422 U.S. 490, 518 (1975)); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000). Motorola has limited its motion to arguing a lack of constitutional standing, which requires a party to have suffered an injury in fact from the defendant's infringement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

      As to constitutional standing, those who might file an infringement action can be divided into three categories: CATEGORY ONE is a person with constitutional standing to sue in his own name alone. He is usually referred to in judicial opinions as the "owner," "effective owner," or "assignee" of the patent, or as an "exclusive licensee" who has received "all substantial rights" from the owner. His standing derives from the Patent Act, which provides a "patentee" is entitled to bring a civil action "for infringement of his patent." 35 U.S.C. § 281. "Patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). Those provisions of the Patent Act have been interpreted to require an infringement suit "ordinarily be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). The exception would be where the party holding legal title transfers "substantially all rights" in the patent to another, in which case the transferee obtains CATEGORY ONE status. *Id.*

      CATEGORY TWO is a person who has some exclusionary rights in the patent, but not enough to qualify as CATEGORY ONE. He is most often referred to in judicial opinions as an "exclusive licensee" who has not received "all substantial rights." *See, e.g.*, *Prima Tek*, 222 F.3d at 1377. He has constitutional standing, but principles of prudential standing usually require him to join, as a co-plaintiff, the person with CATEGORY ONE status as to that patent. *Id.*; *WiAV Solutions LLC v. Motorola Inc.*, 631 F.3d 1257, 1264-65 (Fed. Cir. 2010); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016).

CATEGORY THREE is a person who does not fall into either CATEGORY ONE or TWO, and thus has no constitutional standing. *Prima Tek*, 222 F.3d at 1377.

In a given case, the language in the underlying documents describing the transaction, or in the opinion describing the parties, may not accurately reflect the distribution of rights. *See, e.g.*, *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009) (whether document was assignment or license "did not depend on the name applied to it"); *Morrow*, 499 F.3d at 1340 n.7.  For example, a document titled as an "assignment" may not transfer sufficient rights to give the assignee CATEGORY ONE status; conversely, a document titled only as a "license" may transfer sufficient rights to constitute an assignment, thus conferring CATEGORY ONE status.  Or a document granting what it refers to as an "exclusive license" may contain limitations on exclusivity that preclude CATEGORY TWO status.  Or someone may be referred to in an opinion as the "owner," even after he assigned the patent, where he received a license back from the assignee.

To avoid confusion, wherever possible this Opposition will use the above CATEGORY designations to describe the parties to standing disputes.

### B.  Fortress never acquired the right to sublicense as Motorola argues.

Before this action was filed, the former owner of the patent assigned it to Uniloc Luxembourg.  Foster Decl., ¶ 1.A.  Thus, as of the action's filing date, Uniloc Luxembourg was the legal owner of the patent and would seemingly have been a CATEGORY ONE plaintiff.[2]

Motorola argues, however, Uniloc Luxembourg was not a CATEGORY ONE plaintiff, because it had given a lender ("Fortress") a security interest, which included a nonexclusive right to sublicense this patent in the event of a default by Uniloc Luxembourg. Mot. at 2-4.  Motorola

---

[2]  Uniloc Luxembourg entered into an agreement with Uniloc USA giving the latter an exclusive license, Foster Decl., ¶ 1.B, making Uniloc USA a CATEGORY TWO plaintiff.

Case 1:17-cv-01658-CFC Document 67 Filed 01/09/19 Page 8 of 16 PageID #: 1308

argues there had been an event of default as of the filing of these actions, and thus Fortress then possessed the right to sublicense Motorola. Mot. at 4-6. Motorola argues Fortress's possession of that right as of the filing deprived Uniloc Luxembourg of CATEGORY ONE status. Not so.

The Intellectual-Property Finance Group at Fortress facilitates investments, such as loans, on behalf of various affiliates, which are secured by the borrowers' patents. *See* accompanying Palmer Decl., ¶ 3. In this case, Fortress made a secured loan to Uniloc USA and Uniloc Luxembourg on December 30, 2014. As is typical in that type of transaction, the loan documents included various provisions that would allow the lender, in the event of default on the loan, to foreclose on collateral or otherwise enforce repayment. *Id*., ¶¶ 4-6. At the time these actions were filed, however, Fortress did not view or treat Uniloc as having defaulted, and did not believe it had a right to sublicense any Uniloc patents. *Id*., ¶¶ 8-21. The facts on which Motorola bases its Motion did not constitute an event of default. *Id.* In any event, if those facts had been sufficient to be called an event of default, that default would have been annulled.[3] Fortress's security interest in the Uniloc patents thus did not deprive Uniloc Luxembourg of standing.

---

[3] Motorola argues there is no evidence Plaintiffs "cured either Event of Default," citing testimony from a Fortress witness that he was not aware of any instance in which an event of default had been cured. Mot. at 6. But Motorola omits his reason – there had been no event of default in the first place: "I am not aware of an event of default .… I'm just not aware of an event of default." Dkt. No. 58-2, Ex. D at 90:5, 24. *Id.*, ¶ 14.

4

### C. Fortress's obtaining the right to sublicense would not have deprived Uniloc Luxembourg of constitutional standing.

#### 1. The background to *Mann*.

Most patent cases in which standing is discussed at the appellate level have a familiar pattern. The person to whom the patent was issued or assigned (usually referred to as the "owner") grants an "exclusive" license to another person. The court then examines the rights the license transferred, to determine whether those rights are sufficiently exclusive to give the recipient constitutional standing, and whether the patent rights the "owner" had retained require it to be named as a co-plaintiff (the latter being a question of prudential, not constitutional, standing). *See*, *e.g.*, *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001); *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1342 (Fed. Cir. 2014). But there is generally always a CATEGORY ONE plaintiff or co-plaintiff, either already in the case or potentially to be named.

In September 2007, the Federal Circuit issued *Morrow*, which had a somewhat different fact pattern. In that case, the entity that had been the patent owner (AHC) went bankrupt and went out of business. In the bankruptcy, the various creditor groups agreed to distribute differing portions of the rights in the patent to three separate entities. The court ruled the named plaintiff (GUCLT), the one of those three entities to which the creditors had given the right to sue, was a CATEGORY THREE plaintiff, and thus did not have constitutional standing.

Following that decision, there was a concern in the patent bar that the opinion, if extended beyond the case's holding in a bankruptcy context, might result in *no one* having constitutional standing to bring suit on a patent, depending upon how the various rights had been divided up. (Indeed, three months after *Morrow*, a district court seemed to have accepted that possibility. *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 630 F.Supp. 2d 365, 371

5

(D. Del. 2007)). Because that result would be unsatisfactory (and presumably unintended), the bar expected the Federal Circuit to clarify that issue, in some future case. *Mann* was that case.

### 2. *Mann* explained there is always a CATEGORY ONE plaintiff.

In *Mann*, the patents, when issued, were assigned to AMF. AMF later gave certain rights to a separate entity, AB, and retained others. AMF then sued Cochlear, which moved to dismiss for lack of constitutional standing, claiming AMF had not retained sufficient rights to be a CATEGORY ONE plaintiff.

The opinion described the relevant principles in terms of a transfer of rights from an owner/licensor who, before the transfer, had possessed all substantial rights in the patent (and thus had CATEGORY ONE status) to an "exclusive licensee." Relevant to Motorola's motion, *Mann* held:

> A patent owner may transfer all substantial rights in the patent-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee. . . . [¶] This happens when the exclusive license transfers "all substantial rights" in the patents. When this happens, the exclusive licensee has sole standing to sue those suspected of infringing the patents' claims. . . . This case presents a . . . scenario in which the patent owner seeks to bring suit, requiring us to determine whether the patent owner transferred away sufficient rights to divest it of any right to sue.

> \* \* \*

> [A] patent may not have multiple separate owners for purposes of determining standing to sue. *Either the licensor did not transfer "all substantial rights" to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement*, or the licensor did transfer "all substantial rights" to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own. In either case, *the question is whether the license agreement transferred sufficient rights to the exclusive licensee to make the licensee the owner of the patents in question. If so, the licensee may sue but the licensor may not. If not, the licensor may sue, but the licensee alone may not*.

604 F.3d at 1358-60 (citations omitted) (emphasis added). This portion of *Mann* resolved the lingering issue from *Morrow*, by ruling out a scenario where *no one* has standing to sue on a given patent.

The opinion established a default rule: One who possesses sufficient rights to qualify as the sole CATEGORY ONE plaintiff maintains that status unless and until he transfers "all substantial rights" to another, after which that other qualifies as the CATEGORY ONE plaintiff. In a situation where a CATEGORY ONE plaintiff transfers some rights – but not "all substantial rights" – that entity retains CATEGORY ONE status (including the "right to sue for infringement").

Here, originally *all* of the patent rights were obtained by Uniloc Luxembourg, which gave Uniloc Luxembourg CATEGORY ONE status. Motorola does not argue Uniloc Luxembourg transferred "all substantial rights" to Fortress. Nor could it, because Fortress's right to sublicense would have been merely *nonexclusive*, Dkt. No. 58-1, Ex. B, ¶ 2.1, far short of a grant of "all substantial rights." Under *Mann*, Uniloc Luxembourg thus had "the right to sue for infringement" at the time of filing.

*Mann* states, unambiguously, if "the licensor did not transfer 'all substantial rights' to the exclusive licensee[,] the licensor … retains the right to sue for infringement." Here, Uniloc Luxembourg would have been the "licensor," and it did not transfer "all substantial rights" to Fortress. Thus Fortress's receiving a nonexclusive right to sublicense in the event of a default could not have deprived Uniloc Luxembourg of its CATEGORY ONE status, and Uniloc Luxembourg "retains the right to sue for infringement."

Reinforcing the default rule of *Mann* are several Federal Circuit cases that found a person with CATEGORY ONE status maintains that status, despite others having a right to sublicense:

7

In *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006), the action was filed by Contour, the original owner of the patent (and thus the original holder of CATEGORY ONE status). The court held Contour maintained its CATEGORY ONE status, and thus constitutional standing, despite having transferred to another person "the exclusive right to make, use, and sell" products covered by the patent and a "virtually unfettered right to sublicense all of its rights to a third-party," *id.*, at 1338-39, 1341-42, as Contour "retained 'no supervisory power or veto power'" over that person's grant of sublicenses. *Id.*, at 1342.

In *AsymmetRx*, the original owner (Harvard, a nonparty) was held to have CATEGORY ONE status, and constitutional standing, even though it had transferred to a licensee (AsymmetRx) the right to grant a sublicense. 582 F.3d at 1316. The court required Harvard be joined as a party.

In *Prima Tek*, the original owner (Southpac) was held to have maintained its CATEGORY ONE status, even though another person (Prima Tek II) had a contractual right to grant additional sublicenses. 222 F.3d at 1375.

And in *Mann* itself, the original owner (AMF) retained its CATEGORY ONE status, even though it may have transferred to an exclusive licensee (AB) a right to grant sublicenses to "defendants sued by AMF." 604 F.3d at 1362.

Motorola argues *Mann* did not "hold" the right to sublicense is irrelevant to standing. Admittedly, a court may consider the right to sublicense as a factor in determining whether a person having CATEGORY ONE status transferred "all substantial rights" to another. In *Mann*, for example, as Motorola points out, Mot. at 14-15, the court weighed the transfer to AB of a right to sublicense as a factor, among others, in deciding whether AMF had transferred "all

substantial rights" to AB, which would have made AB the one with CATEGORY ONE status. 604 F.3d at 1362.

But that does not help Motorola here, because it does not, and cannot, argue Uniloc Luxembourg transferred "all substantial rights" to Fortress.

Motorola bases its argument – a person does not have standing if another person has a right to sublicense – on dicta from *WiAV*, 631 F.3d at 1266. Mot. at 13-14. But that was a CATEGORY TWO case, not a CATEGORY ONE case. WiAV had added the CATEGORY ONE entity (Mindspeed, referred to in that opinion as the "patent owner") as an involuntary defendant. *Id.*, at 1265 n.1. WiAV claimed standing as a CATEGORY TWO plaintiff, as the holder of an *exclusive* license to the relevant patents. Because, unlike CATEGORY ONE, CATEGORY TWO status requires exclusivity, the issue was whether another's right to license those patents deprived WiAV of its exclusivity, and thus of its CATEGORY TWO status.

Motorola cites similar dicta from *Luminara*, 814 F.3d at 1348. Mot. at 13-14. In that case, a nonparty, Disney, owned the patent and thus, before granting an exclusive license to Candella, Luminara's predecessor, indisputably had CATEGORY ONE status. The question for the court was whether the exclusive license agreements signed prior to suit being filed, which gave Candela, among other rights, a right to sublicense, transferred "all substantial rights" from Disney to Candella, giving Candella, instead of Disney, CATEGORY ONE status. Defendant argued Disney's retention of the right to license certain of its affiliates rendered the transfer insufficient to bestow CATEGORY ONE status on Candella. In that context, the court said that if both Disney and Candela were free to license "any" entity, "all substantial rights" would not have been transferred. *Id.* But the court found Disney had not retained that right.

9

*Luminara* actually supports Plaintiffs' position by suggesting, albeit in dicta, that Disney would have retained its CATEGORY ONE status if Candela's right to sublicense had been nonexclusive, like Fortress's here. Neither *WiAV* nor *Luminara* conflicts with the default rule of *Mann*, under which a person who has CATEGORY ONE status retains that status unless and until he transfers "all substantial rights" to another.

The Federal Circuit did not arrive at this default rule arbitrarily. The rule has considerable significance to patent litigation and the law of patents generally. A holding that *no one* has standing to enforce a patent, the result for which Motorola is unabashedly arguing, would have profound implications, all of which are negative. The *Mann* rule should be followed here, and Motorola's argument should be rejected.

### III.     THIS CASE SHOULD NOT BE DISMISSED.

For the reasons discussed above, the Plaintiffs had constitutional standing when the action was filed, and thus the Court would not dismiss the action for lack of subject matter jurisdiction.

But if the Court found otherwise, a dismissal on jurisdictional grounds would not go to the merits, and thus would necessarily be without prejudice, allowing Uniloc 2017[4] to file a new action. *H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002); *Univ. of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F.3d 1328, 1331-33 (Fed. Cir. 2009); *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1380 (Fed. Cir. 2009). Where a court finds a problem with standing that requires dismissal, the dismissal should always be without prejudice if the problem is capable of correction. *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed. Cir. 2001).

---

[4] Plaintiffs recently transferred all rights in the patent in suit to Uniloc 2017 LLC ("Uniloc 2017"), and have moved to substitute that entity as plaintiff.

Despite that, Motorola asks this Court to dismiss the action with prejudice, as some sort of sanction. Most of Motorola's argument on this point consists of *ad hominem* attacks on counsel. Uniloc 2017 is submitting with this opposition the Declaration of James J. Foster, responding to those.

Scraping to find case support for its extraordinary request for the sanction of a with-prejudice dismissal, Motorola clumsily cites language from *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992), where the court rails against "litigants who flagrantly violate or ignore court orders." That language obviously has no relevance here.

Dated: January 9, 2019

Respectfully submitted,

*/s/ Sean T. O'Kelly*
Sean T. O'Kelly (No. 4349)
O'KELLY ERNST & JOYCE, LLC
901 N. Market Street, Suite 1000
Wilmington, DE 19801
Tel: (302) 778-4000
Fax: (302) 295-2873
Email: sokelly@oelegal.com

Of Counsel:

Paul J. Hayes
Massachusetts State Bar No. 227,000
James J. Foster
Massachusetts State Bar No. 553,285
Kevin Gannon
Massachusetts State Bar No. 640,931
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100
Email: phayes@princelobel.com
Email: jfoster@princelobel.com
Email: kgannon@princelobel.com

**ATTORNEYS FOR THE PLAINTIFFS**