IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNILOC USA, INC. and UNILOC          )
LUXEMBOURG, S.A.,                    )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )    C.A. No. 17-1658 (CFC)
                                     )
MOTOROLA MOBILITY, LLC,              )    **FILED UNDER SEAL**
                                     )
                Defendant.           )


**MOTOROLA MOBILITY, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**


                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                        Karen Jacobs (#2881)
                                        Jack B. Blumenfeld (#1014)
                                        1201 North Market Street
OF COUNSEL:                             P.O. Box 6547
                                        Wilmington, DE  19899-6547
Martha Jahn Snyder                      (302) 658-9200
Carly S. Conway                         jblumenfeld@mnat.com
Bryce A. Loken                          kjacobs@mnat.com
QUARLES & BRADY LLP
33 East Main Street, Suite 900          *Attorneys for Defendant*
Madison, WI  53703                      *Motorola Mobility, LLC*
(608) 251-5000

Louis A. Klapp
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Tel: (312) 715-2712

*Attorneys for Defendant Motorola Mobility,
LLC*

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.  SUMMARY OF THE ARGUMENT ............................................................................. 1

III. STATEMENT OF FACTS ............................................................................................ 1

   A.   Uniloc Lux Acquired the Patent-in-Suit and Purported to Grant "Exclusive" Rights to
        Uniloc USA Before Filing Suit Against Motorola ............................................................. 2

   B.   Plaintiffs Granted Fortress the Right to Sublicense to Third Parties .................................. 2

   C.   Multiple Events of Default Occurred, Vesting Fortress with Full Rights to Sublicense and
        Transfer Any and All Patents of Uniloc Lux and Uniloc USA ......................................... 4

        1.   Plaintiffs defaulted by failing to meet revenue requirements ......................................... 4

        2.   Plaintiffs defaulted by making misrepresentations about validity challenges to the
             patents ........................................................................................................................... 5

        3.   Fortress never waived any Events of Default ................................................................ 6

   D.   Uniloc Lux Terminated License to Uniloc USA and Assigned Rights to Uniloc 2017 ..... 7

   E.   Plaintiffs Resisted and Delayed Production of Discovery Related to Standing ................ 7

IV.  LEGAL STANDARD .................................................................................................... 9

V.   ARGUMENT .................................................................................................................. 10

   A.   Plaintiffs Lacked Standing at the Time They Filed Suit .................................................. 10

        1.   Fortress's Right to Sublicense the Patent-in-Suit was Triggered by at Least Two
             Events of Default ........................................................................................................... 10

             a.   *Plaintiffs defaulted by failing to meet revenue requirements* ................................... 11

             b.   *Plaintiffs defaulted by making misrepresentations about validity challenges to the
                  patents* ................................................................................................................... 11

        2.   Plaintiffs' Events of Default gave Fortress the right to sublicense the patent-in-suit and
             destroyed Plaintiffs' constitutional standing to sue Motorola ..................................... 12

             a.   *Uniloc Lux lacked constitutional standing to sue Motorola because Fortress's right
                  to sublicense the patent-in-suit was largely unfettered* .......................................... 13

       *b.*   *Uniloc USA lacked constitutional standing to sue Motorola because Uniloc Lux could not convey "exclusive" rights in the patent-in-suit to Uniloc USA* .............. 15

B.   Plaintiffs Cannot Cure Their Lack of Standing With a Rule 25(c) Motion to Substitute, or Any Other Procedural Tactic ............................................................................ 16

C.   This Action Should be Dismissed With Prejudice Because Plaintiffs Misrepresented and Concealed Their Standing Problems for Months ............................................................ 17

   1.   Plaintiffs were responsible for withholding relevant information ............................... 17

   2.   Motorola has been prejudiced by Plaintiffs' misconduct ............................................. 18

   3.   Plaintiffs have demonstrated a history of dilatoriness and bad faith ........................... 18

   4.   Dismissal with prejudice is the only appropriate sanction ........................................... 20

   5.   Motorola's defense is meritorious ................................................................................. 20

VI.   CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017)................................................................................................ 13

*Adegbuji v. Middlesex Cty.*, 347 F. App'x 877 (3d Cir. 2009) .................................................... 17

*Adidas AG v. Under Armour, Inc.*, 2015 WL 3764829 (D. Del. June 15, 2015)......................... 13

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010)... 15

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)........................................... 10

*Fairchild Semiconductor Corp. v. Power Integrations*, 630 F. Supp. 2d 365 (D. Del. 2007)...... 15

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) ................................................................. 9

*In re Schering Plough Corp. Intron/Temodar Class Action*, 678 F.3d 235 (3d Cir. 2012)............ 9

*Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343 (Fed. Cir. 2016)................. 13, 14

*Mindek v. Rigatti*, 964 F.2d 1369 (3d Cir. 1992) ........................................................................ 17

*Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007)............................................. 9, 10, 16

*Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812 F. Sup. 1352 (D. Del. 1992)............................. 9

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d. 863 (3d Cir. 1984).............................. 17, 20

*Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372 (Fed. Cir. 2000) .......................................... 16

*Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995)............................................... 16

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005)........................ 17

*Shahin v. Delaware*, No. CIV. A. 07-452-GMS, 2009 WL 485168 (D. Del. Feb. 26, 2009) ...... 20

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) ..................................... 16

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000)................................................... 15

*WiAV Solutions v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) ................................. 10, 14, 15

**Rules**

Fed R. Civ. P. 12(h)(3) ........................................................................................................ 9, 16

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1, 9, 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 9

Fed. R. Civ. P. 25(c) ......................................................................................................... 16, 17

Fed. R. Civ. P. 26 ............................................................................................................... 7, 18

Local Rule 7.1.1 ...................................................................................................................... 8

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiffs, Uniloc USA, Inc. ("Uniloc USA") and Uniloc Luxembourg, S.A. ("Uniloc Lux") (collectively, "Plaintiffs"), filed this action against Motorola Mobility, LLC ("Motorola") alleging infringement of U.S. Patent No. 6,161,134 (the "patent-in-suit").   Pursuant to Fed. R. Civ. P. 12(b)(1), Motorola respectfully requests the Court dismiss with prejudice the Amended Complaint (D.I. 10) for lack of subject matter jurisdiction because Plaintiffs lacked constitutional standing at the time the Original Complaint (D.I. 1) was filed.

## II.    SUMMARY OF THE ARGUMENT

Plaintiffs lacked standing from the day this case was filed because, even combined, they did not have the right to exclude Motorola—or any defendant—from practicing the patent.  Before filing suit here, Plaintiffs, by virtue of defaulting on a creditor agreement, gave Fortress Credit Co. LLC ("Fortress") the right to transfer or sublicense any of Plaintiffs' patents at Fortress's "sole and absolute discretion."  Since Plaintiffs lacked the right to exclude Motorola from using the patent, they could not claim an injury-in-fact, and thus did not have standing.  Plaintiffs' lack of standing is a fatal problem, because a standing defect that existed at the outset of a case cannot be cured.  Moreover, Plaintiffs have repeatedly withheld information regarding how the rights in the patent-in-suit were divided, inaccurately represented that the documents they had already produced were "sufficient to establish which entities own which rights, and etc." (Conway Decl., Ex. S, 11/2/2018 Jacobs ltr. to Conway).  Because Plaintiffs caused Motorola and the Court to expend resources unnecessarily, dismissal with prejudice is warranted.

## III.    STATEMENT OF FACTS

The history of the rights and interests in the patent-in-suit is far more tangled than Plaintiffs let on in their two-paragraph Motion to Substitute Uniloc 2017, LLC ("Uniloc 2017") as Plaintiff

(D.I. 50).  This suit was filed by Plaintiffs six months after Uniloc Lux acquired the patent-in-suit from Hewlett Packard Enterprise Company ("HPE") on May 16, 2017.  (Conway Decl., Ex. K, Patent Sale Agreement).  However, Uniloc Lux entered into multiple agreements that split up the rights to its patent portfolio—including the patent-in-suit—in several ways that destroyed any standing Plaintiffs had at the time this suit was filed in November, 2017.  These rights are described below and summarized in Appendix A.

### A. Uniloc Lux Acquired the Patent-in-Suit and Purported to Grant "Exclusive" Rights to Uniloc USA Before Filing Suit Against Motorola

On May 16, 2017, Uniloc Lux purportedly acquired the patent-in-suit from HPE.  (Conway Decl., Ex. K).  On May 26, 2017, Uniloc Lux and Uniloc USA entered into a License Agreement ("Lux-to-USA License").  (Conway Decl., Ex. L, License Agreement).  The Lux-to-USA License purported to give Uniloc USA the "exclusive" right to make, use, sell, and sublicense the patent-in-suit.  (Conway Decl., Ex. L, § 1).  However, as described below, Uniloc Lux had already granted rights to sublicense or transfer its interests in all its patents, including the patent-in-suit.  (Conway Decl., Ex. D, Levy Dep. 66:22–67:5, 71:21–72:1).

### B. Plaintiffs Granted Fortress the Right to Sublicense to Third Parties

Plaintiffs operate as patent-acquisition-and-enforcement entities.  On December 30, 2014, Plaintiffs entered into at least two agreements with Fortress that memorialized a loan to the Uniloc entities to fund their litigation campaigns.  These agreements included: (1) a Revenue Sharing and Note and Warrant Purchase Agreement ("Revenue Sharing Agreement") (Conway Decl., Ex. A); and (2) a Patent License Agreement ("Fortress License") (Conway Decl., Ex. B).  The Revenue Sharing Agreement was later amended three times, with the final amendment occurring on May 15, 2017 (Conway Decl., Ex. C).

As part of this financing arrangement, Plaintiffs granted a patent license to Fortress.

(Conway Decl., Ex. A, § 2.8).  Fortress's license "***include[d] the right to grant sublicenses***[] with respect to the Patents" and applied to "all intellectual property of [Uniloc Lux and Uniloc USA]." (*Id.* § 2.8, Appendix I A-7 (emphasis added); Ex. D, 66:22–67:5; Ex. E, Turner Dep. 23:24–24:3). Because the Revenue Sharing Agreement encompassed "all intellectual property of [Uniloc Lux and Uniloc USA]," Fortress's licensing rights also attached to the patent-in-suit.  According to Fortress's Managing Director, Erez Levy, the parties intended for Fortress's rights to "attach to all of [Uniloc Lux's] . . . intellectual property" and "to include the patents Uniloc Luxembourg later acquired from Hewlett Packard")) (Conway Decl., Ex. A, § 2.8, Appendix I A-7; Ex. D, 66:22–67:5; 71:21–72:1. The key language of the Fortress License provided:

> Subject to the terms and conditions herein and in the Purchase Agreement, Licensor hereby grants to Licensee a non-exclusive, ***transferrable, sub-licensable***, divisible, irrevocable, fully paid-up, royalty-free, and worldwide license to the Licensed Patents, including, but not limited to, the rights to make, have made, market, use, sell, offer for sale, import, export and distribute the inventions disclosed in the Licensed Patents and otherwise exploit the Licensed Patents in any lawful manner in ***Licensee's sole and absolute discretion*** solely for the benefit of the Secured Parties ("Patent License"), provided that Licensee shall only use the Patent License following an Event of Default.

(Conway Decl., Ex. B, § 2.1 (emphasis added)).  Fortress's right to sublicense was thus largely unfettered.  Fortress could grant licenses in its "sole and absolute discretion" unless the sublicense imposed "financial obligations or restrictions" on Uniloc Lux or Uniloc USA.  (*Id.* at § 2.2). Fortress was also permitted to transfer its rights and interests "without restriction" and "without consent of [Uniloc Lux or Uniloc USA]."  (*Id.* at § 8).

There was only one requirement to activate Fortress's sublicense rights: the Fortress License provided that "[Fortress] shall only use the Patent License following an Event of Default."  (*Id.* at § 2.1).  The parties defined "Event[] of Default" very broadly.  (Conway Decl., Ex. A, § 7.1).  For instance, an "Event[] of Default" would occur if Uniloc Lux or Uniloc USA "fail[ed] to perform or

3

observe *any* of the [dozen-plus] covenants or agreements contained in Article VI [of the Revenue Sharing Agreement]." (*Id.* at § 7.1.2, Article VI (first emphasis added, second omitted)).  Likewise, an Event of Default would occur if "*[a]ny* representation or warranty . . . with respect to [Uniloc Lux and Uniloc USA] . . . [were] false in any material respect on the date as of which it was made." (*Id.* at § 7.1.3 (emphasis added)).  These terms allowed Fortress to protect itself if Plaintiffs did not perform as required.  In that case, Fortress would automatically gain the right to sublicense or even take possession of and sell any or all of Plaintiffs' patents.  (Conway Decl., Ex. F, Security Agreement, at § 7.1).

### C. Multiple Events of Default Occurred, Vesting Fortress with Full Rights to Sublicense and Transfer Any and All Patents of Uniloc Lux and Uniloc USA

By the time Plaintiffs filed the Original Complaint, at least two different Events of Default had occurred, triggering Fortress's right to sublicense the patent-in-suit.

#### 1. Plaintiffs defaulted by failing to meet revenue requirements

First, Plaintiffs defaulted by failing to meet the revenue covenant of Section 6.2.2 of the Revenue Sharing Agreement.  This covenant required that, "[a]s of March 31, 2017 and the last day of each fiscal quarter thereafter, [Uniloc Lux and Uniloc USA] . . . have received at least $20,000,000 in Actual Monetization Revenues during the fourth fiscal quarter period ending on such date." (Conway Decl., Ex. A, § 6.2.2).  "Actual Monetization Revenues" referred to revenues that Uniloc Lux or Uniloc USA received from licensing or judgments.  (*See id.* at App'x I A-1 (defining "Actual Monetization Revenue"); Ex. D, 77:23–78:5).  As of March 31, 2017, Uniloc Lux and Uniloc USA had generated only approximately $14,608,000 in licensing revenues for the four-quarter period ending on that date.  (Conway Decl., Ex. A, Schedule 4.5(a) (total of all license agreements dated between April 1, 2016, and March 31, 2017); Ex. E, 29:6–30:8).  Plaintiffs reported even less—only $14,360,989 in licensing and litigation revenue for the four quarters ending

4

June 30, 2017.  (Conway Decl., Ex. G, Disclosure Schedules at -16839, -16849; Ex. E, 66:4– 67:6; 68:15–18).  There is no evidence that this default was ever cured or waived.  (*See* Conway Decl., Ex. D, 89:13–90:15).

### 2. Plaintiffs defaulted by making misrepresentations about validity challenges to the patents

Second, Plaintiffs defaulted on their agreement with Fortress by breaching a covenant requiring certain representations to be true.  (*See* Conway Decl., Ex. A, § 7.1.3).  Article IV of the Revenue Sharing Agreement set forth representations that Plaintiffs made "[i]n order to induce [Fortress]" to enter that agreement.  (*Id.* at Art. IV).  These representations were first made as of the original closing date of December 30, 2014 and were later re-affirmed upon the signing of the May 15, 2017 amendment.  (Conway Decl., Ex. C, § 3.02 ("The representations and warranties of [Uniloc Lux and Uniloc USA] contained in the Agreement being true and correct in all material respects . . . each **on and as of** [May 15, 2017]." (emphasis added)).

Among other things, Plaintiffs represented that "**_[a]ll_** of the [Uniloc] Patents . . . **have not been adjudged invalid or unenforceable**, in whole or in part, and **none of the Patents [is] at this time . . . subject to any challenge to their validity or enforceability**."  (Conway Decl., Ex. A, § 4.5 (emphasis added)).  Plaintiffs also represented that they had "no notice of any lawsuits, actions or opposition, cancellation, revocation, re-examination or reissue proceedings commenced or threatened with reference to any of the Patents."  (*Id.*).  But by May 15, 2017, when they reaffirmed these representations, at least seven Uniloc patents had already "been adjudged invalid or unenforceable, in whole or in part."  (*See generally* App'x B; Conway Decl., Ex. A, § 4.5).  And at least 13 more Uniloc patents were "subject to . . . challenge[s] to their validity or enforceability" in

lawsuits and re-examination proceedings.  (*Id*.).[1]

### 3.   Fortress never waived any Events of Default

Fortress never waived any Events of Default even though the Revenue Sharing Agreement

permitted it to do so, as confirmed by Fortress's Managing Director, Erez Levy:

**Q**. Section 7.3 refers to waiving an event of default in writing, correct?

**A.** Yes, [Clause] (X).

**Q.** Are you aware of any instance where the majority purchasers waived an event of default in writing?

**A.** I am not aware.

…

**Q.** Are you aware of any instance where an event of default was in existence but then ceased to exist?

**A.** I am not aware of any such event.

**Q.** Clause (Z) refers to an amendment to the agreement that cures an event of default. Do you see that?

**A.** I do.

**Q.** Are you aware of any amendment to this agreement that cures an event of default?

**A.** No.

**Q.** This agreement has been amended three times, right?

**A.** Correct.

**Q.** Did any of those amendments cure an event of default?

**A.** Not that I'm aware of.

(Conway Decl., Ex. D, 89:13–90:15).  Nor is there any evidence that Plaintiffs cured either Event of

Default.  As a result, Fortress's right to sublicense any patents owned by Plaintiffs had vested at

least by May 15, 2017 and continued past November 15, 2017, when this suit was filed.

---

[1] Plaintiffs' statements were also misrepresentations at the time they were first made on December 30, 2014.  By that date, at least one Uniloc patent had already been adjudged invalid in part, and at least two other patents were subject to pending invalidity challenges.  (Conway Decl., Ex. H, IPR2013-00391 Final Decision; Ex. I, Case No. 6:14-cv-00625-RWS (E.D. Tex.), D.I. 73).

**D. Uniloc Lux Terminated License to Uniloc USA and Assigned Rights to Uniloc 2017**

On March 28, 2018, Uniloc Lux agreed to assign the patent-in-suit to a new entity, Uniloc 2017, and to terminate both the Lux-to-USA License and the Fortress License.  (Conway Decl., Ex. M, Asset Purchase Agreement at § 2.7(b)(iii) and (vi)).  The assignment and termination formally occurred on May 3, 2018.  (*Id.*, Exs. N (Patent Assignment) & J (Termination Agreement).

**E. Plaintiffs Resisted and Delayed Production of Discovery Related to Standing**

Although the transactions described above had all been completed by May 3, 2018, Plaintiffs withheld relevant documents and information for months.  Plaintiffs' Rule 26 disclosures, served on July 11, 2018 (Conway Decl., Ex. O), and their Paragraph 3 disclosures, served on August 28, 2018 (Conway Decl., Ex. P), failed to reflect the assignment of the patent-in-suit, or to identify any witnesses with relevant knowledge of the transfer, or of Uniloc 2017.  On July 30, 2018, Motorola served numerous discovery requests regarding ownership and licensing of the patent-in-suit.  On September 5, 2018, Plaintiffs disclosed for the first time to Motorola that Uniloc Lux assigned the patent-in-suit to another entity, (Conway Decl., Ex. Q, 9/5/2018 Discovery Responses, Response to Interrogatory No. 4), but did not provide the assignment document or any other evidence supporting the transfer of rights.

On September 27, 2018, Plaintiffs sought Motorola's approval to file an unopposed motion to join Uniloc 2017 as an additional plaintiff in this suit.  (Conway Decl., ¶ 5).  As Plaintiffs had not provided sufficient information for Motorola to evaluate the impact of Plaintiffs' motion, Motorola requested documents and information responsive to its pending discovery requests.  (*Id.*).  Meanwhile, on September 4, 2018, in a separate litigation in which Plaintiffs asserted the patent-in-suit, among others, against Apple, Inc. (the "Apple Litigation"),[2] the court in that case ordered

---

[2] *Uniloc USA, Inc. et al. v. Apple Inc.*, Case No. 3:18-cv-00360-WHA (N.D. Cal.).

Uniloc to produce to Apple, by September 11, all documents—"[e]verything[, n]ot just 99 percent"—regarding the ownership of the patent-in-suit.  (Conway Decl., Ex. T, Hearing Tr., at 18:21–24).  Those documents included agreements between Uniloc Lux and Fortress.  (*Id.* at 11:12–21).  Yet, Uniloc failed to reproduce that document production to Motorola, or to otherwise produce documents relevant to Plaintiffs' transfer of rights to the patent-in-suit and responsive to Motorola's discovery requests.  (Conway Decl., ¶ 4).  On October 19, 2018, Uniloc produced just five documents, including the public assignment of the patent-in-suit from Uniloc Lux to Uniloc 2017, and Uniloc 2017's subsequent licensing activity.  (Conway Decl., ¶ 6).  Motorola reiterated its demand that Plaintiffs produce ***all*** materials regarding the transfer of ownership or interests in the patent-in-suit, including those they had been ordered to produce to Apple—the same materials Motorola had requested months earlier in discovery.  (Conway Decl., Ex. R, 10/26/18 Conway ltr. to Jacobs).  On November 7, after multiple entreaties from Motorola's counsel, Plaintiffs finally produced the Fortress License, among other documents.  (Conway Decl., ¶ 7).  It was only then that Motorola learned, for the first time, that Fortress had possessed a largely unfettered right to sublicense the patent-in-suit when Plaintiffs filed this suit.

On November 27, 2018, without meeting and conferring with Motorola as required under Local Rule 7.1.1, Plaintiffs attempted to file a motion to substitute Uniloc 2017.  (Conway Decl., ¶ 8).  Plaintiffs subsequently withdrew the motion when Motorola raised the lack of meet-and-confer with Plaintiffs.  On November 28, 2018, during a meet and confer about the withdrawn motion, Plaintiffs blatantly refused a direct request for production of a new agreement purportedly transferring rights to the patent-in-suit, which had been executed on November 16, 2018.  (*Id*., ¶ 9).  This document was directly responsive to Motorola's Request for Production No. 9, seeking "all documents and communications relating to any . . . licensing, assignment, acquisition, or transfer of

ownership or other rights in the patent-in-suit." Finally, on December 4, 2018, after additional prodding from Motorola, Plaintiffs produced the November 16 agreement. (*Id*.). On December 11, 2018, after meeting and conferring with Motorola, Plaintiffs re-filed their motion to substitute. (D.I. 50). Motorola's opposition is filed concurrently with this Motion to Dismiss.

## IV.    LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) tests the plaintiff's assertion of subject matter jurisdiction. Unlike a Rule 12(b)(6) motion, where the court accepts as true all allegations in the complaint, a 12(b)(1) motion "is much more demanding" of the plaintiff. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proof. *Id*. The court "may not presume the truthfulness of plaintiff's allegations, but rather must evaluate for itself the merits of the jurisdictional claims." *Id*. (internal quotations and citations omitted).

Standing to sue is a threshold requirement in every federal action, and must be present at the time the suit is brought. *See, e.g., Pfizer, Inc. v. Elan Pharm. Research Corp*., 812 F. Sup. 1352, 1356 (D. Del. 1992). When the plaintiff lacks standing, the district court does not have subject matter jurisdiction over the case, and the action must be dismissed. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012); *see also* Fed R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). To have standing to sue for patent infringement, an entity must suffer an injury-in-fact from a violation of its exclusionary rights in the patent. *Morrow v. Microsoft Corp*., 499 F.3d 1332, 1340–41 (Fed. Cir. 2007). The right to exclude the accused infringer is dispositive; it distinguishes the entities that can sue, from those that cannot. *Id*.

Critically, the right to exclude can be nullified by licensing rights held by a third party. If an

accused infringer "has the ability to obtain . . . a license from another party with the right to grant it," then the putative plaintiff "does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer." *WiAV Solutions v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010). Without the right to exclude, neither a patent owner nor a licensee has standing to sue, no matter what other rights each may hold. *Morrow*, 499 F.3d at 1340–41; *see also Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1344 (Fed. Cir. 2014) ("[A] nonexclusive . . . licensee does not have a legally protected interest conferred by the Patent Act. That same logic applies even if it is the patent owner holding the nonexclusive right . . . ."), *vacated on other grounds*, 135 S. Ct. 1846 (2015). Even in combination, a patent owner and its licensee lack standing to sue, where a third party has the right to license the patent to potential defendants. *See WiAV*, 631 F.3d at 1266.

## V.   ARGUMENT

### A. Plaintiffs Lacked Standing at the Time They Filed Suit

In order to have standing, Plaintiffs needed the "exclusive" right to control the use of the patent-in-suit at the time the Original Complaint was filed. Even in combination, Plaintiffs did not have sufficient exclusionary rights to create standing, because a third party—Fortress—had the right to license those patents to Motorola. Accordingly, Plaintiffs suffered no injury-in-fact from Motorola's acts because they lacked the right to exclude Motorola from using the patent-in-suit at the onset of the litigation.

#### 1.   Fortress's Right to Sublicense the Patent-in-Suit was Triggered by at Least Two Events of Default

As set forth above, before acquiring the patent-in-suit, Plaintiffs granted Fortress the right to sublicense *any* patents owned by Plaintiffs, at the time of the agreement or in the future. (Conway Decl., Ex. A, § 2.8). Fortress's sublicensing right attached to the patent-in-suit when Uniloc

acquired it on May 16, 2017.  (*See* Conway Decl., Ex. D, 66:22–67:5; 71:21–72:1).  This right was triggered by one condition: "an Event of Default."  (Conway Decl., Ex. B, § 2.1).  By the time Plaintiffs had sued Motorola, at least two Events of Default had already occurred to trigger Fortress's sublicensing right.

### a. *Plaintiffs defaulted by failing to meet revenue requirements*

The first Event of Default occurred on March 31, 2017, because Plaintiffs did not realize $20 million in revenue for the four-quarter period ending on that date, as required by § 6.2.2 of the Revenue Sharing Agreement.  (Conway Decl., Ex. A, § 6.2.2).  Plaintiffs managed only $14 million in revenue over the relevant period, a fact confirmed by Uniloc Lux's financial records and the deposition testimony of its Chief Financial Officer, Drake Turner.  (*Id*., Schedule 4.5(a); Ex. E, at 66:4–67:6; 68:15–18).  Under the terms of the Revenue Sharing Agreement, Plaintiffs' failure to meet the revenue threshold automatically triggered an Event of Default.  (Conway Decl., Ex. A, § 7.1.2).  That Event of Default continued through at least June 30, 2017, as Plaintiffs collected only $14 million for the four-quarter period ending as of that date—again short of the $20 million required by the Revenue Sharing Agreement.  (Conway Decl., Ex. G).  The revenue-based Event of Default was thus ongoing when Plaintiffs filed suit on November 15, 2017.  (*See* Conway Decl., Ex. D, 89:13–90:15).

### b. *Plaintiffs defaulted by making misrepresentations about validity challenges to the patents*

The second Event of Default occurred with the execution of the Third Amended Revenue Sharing Agreement on May 15, 2017, as Plaintiffs made inaccurate representations in that agreement.  (Conway Decl., Ex. C, Art. IV).  The agreement provided that, if certain stated representations were false, an Event of Default occurred automatically.  (Conway Decl., Ex. A, § 7.1.3).  Among other things, Plaintiffs represented that, as of May 15, 2017, none of their patents

11

had been found invalid or was subject to any pending invalidity challenge. (Conway Decl., Ex. C, §
3.02; Ex. A, § 4.5).

These representations were not only false, but materially so. By May 15, 2017, Plaintiffs had
asserted 29 patents in total, at least seven of which (nearly 25%) had been found invalid, in whole or
in part, and 13 more of which (another 44%) were subject to pending invalidity challenges.
(Appendix B, List of Uniloc Patents). These rulings and challenges to Plaintiffs' patents were
information material to Plaintiffs' patent-enforcement business. Plaintiffs' patents represented the
sole collateral for Fortress's multi-million-dollar loan. (Conway Decl., Ex. D, at 59:18–60:24).
Uniloc Lux's Chief Financial Officer, Drake Turner, confirmed what common sense suggests—a
patent being found invalid would lower the value of this collateral. (Conway Decl, Ex. E., at
127:11–129:15).

### 2. Plaintiffs' Events of Default gave Fortress the right to sublicense the patent-in-suit and destroyed Plaintiffs' constitutional standing to sue Motorola

When Uniloc Lux acquired the patent-in-suit, these two Events of Default had already given
Fortress the right in its "sole and absolute discretion" to sublicense Plaintiffs' patents for its own
benefit, as long as the sublicense did not impose "financial obligations or restrictions on
[Plaintiffs]." (Conway Decl., Ex. B, § 2.2). Fortress had also acquired the right to assign its right to
practice Plaintiffs' patents "without [] consent of [Plaintiffs]" and "without restriction." (*Id.* at § 8).
 Under the terms of the Fortress License, Fortress's rights extended to the patent-in-suit. (Conway
Decl., Ex. D, at 66:22–67:5; 71:21–72:1; Ex. E, 23:20–24:3). Nothing occurred between Uniloc Lux
acquiring the patent-in-suit on May 16, 2017, and Plaintiffs suing Motorola on November 15, 2017,
to alter Fortress's rights in the patent-in-suit: the Revenue Sharing Agreement provides that an Event
of Default continues to exist unless and until it is waived or cured, and neither waiver nor cure took
place. (Conway Decl., Ex. A, § 7.3; Ex. D, 89:13–90:15). An amendment to the agreement could

not cure or waive an Event of Default unless it did so "by its express terms." (Conway Decl., Ex. A, § 7.3). And no amendment to the Revenue Sharing Agreement contained express language that cured or waived an Event of Default. (*See* Conway Decl., Ex. C; Ex. D, 90:9–21). Thus, Fortress had the right to sublicense the patent-in-suit to Motorola when Plaintiffs filed suit.

Because Fortress had the right to sublicense or transfer its license to Motorola, Uniloc Lux and Uniloc USA did not have the right to exclude Motorola from practicing the patent-in-suit, individually or together. Without that right, Plaintiffs lacked constitutional standing to sue. *See Luminara Worldwide v. Liown Elecs*, 814 F.3d 1343, 1348 (Fed. Cir. 2016) ("If [the patentee] could indeed license any entity . . . [the licensee] would not have had exclusionary rights to the asserted patents."); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2017 WL 3668597, at *3 (D. Del. Aug. 24, 2017) (third party's ability to license the accused infringers deprived plaintiff of standing to sue). And because Fortress had the right to practice and sublicense the patent-in-suit, Plaintiffs held only ***non-exclusive*** rights in those patents. As holders of non-exclusive rights, Plaintiffs fall into the category of parties that the Federal Circuit has repeatedly held "cannot even participate as a party" in a patent case. *Adidas AG v. Under Armour, Inc.*, 2015 WL 3764829, at *3 (D. Del. June 15, 2015) (quoting *Morrow*, 499 F.3d at 1339). The fact that Plaintiffs describe their rights as "exclusive" is irrelevant; it is the substance of the rights, not their form, that controls. *See id.*

### a. *Uniloc Lux lacked constitutional standing to sue Motorola because Fortress's right to sublicense the patent-in-suit was largely unfettered*

Critically, Fortress's right to sublicense the patent-in-suit was not restricted in any legally relevant way. In both *Luminara* and *WiAV*, the Federal Circuit noted that, in analyzing whether a third party's licensing rights defeated standing, the dispositive issue was whether the right extended to licensing the accused infringer. *Luminara*, 814 F.3d at 1348; *WiAV*, 631 F.3d at 1267. Although

13

the Federal Circuit found standing in *Luminara* and *WiAV*, it did so because the licenses-at-issue allowed the third party to sublicense only to "affiliate[s]," and the accused infringer did not qualify as an affiliate. *Luminara*, 814 F.3d at 1349; *WiAV*, 631 F.3d at 1262–63. Here, in contrast, Fortress's right to sublicense had no similar restrictions. Once an Event of Default had occurred, Fortress had the right to grant any sublicenses in its "sole and absolute discretion." (Conway Decl., Ex. B, § 2.1). Fortress also held the right to transfer its rights to any third party "without restriction" and "without [Plaintiffs'] consent." (*Id.* at § 8). The only restriction was that Fortress could not enter a license requiring Plaintiffs to make financial "obligations." This restriction posed no limitation on Fortress's ability to license Motorola—Fortress could, among other things, agree to a royalty-free license that imposed no financial "obligation" on anyone.[3]

Further, whether Fortress took action based on these Events of Default is irrelevant. Fortress did not need to do anything to obtain its rights in the patent-in-suit: they vested automatically when the Events of Default occurred. (Conway Decl., Ex. A, §§ 6.2.2, 7.1.2). Nor does it matter that Fortress did not actually grant a license to Motorola. Motorola's ***ability***, at the time suit was filed, to obtain a license from a party other than Plaintiffs is what vitiates any claim that Plaintiffs had "exclusionary" rights in the patent-in-suit. *See WiAV*, 631 F.3d at 1266 ("[A]n exclusive licensee lacks standing to sue a party who has the ***ability*** to obtain such a license from another party with the right to grant it.") (emphasis added).

Similarly, in *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, the Federal Circuit again recognized that an unfettered sublicensing right could vitiate a patent owner's exclusionary rights. 604 F.3d 1354, 1362 (Fed. Cir. 2010), citing *Speedplay, Inc. v. Bebop, Inc.*, 211

---

[3] Plaintiffs knew how to restrict a licensee's right to sublicense when they intended to do so. When Uniloc Lux acquired the patent-in-suit, for example, it limited the original patent owner's

F.3d 1245, 1251 (Fed. Cir. 2000).  However, unlike this case, the sublicensing issue in *Mann* was fettered: any sublicense was required to include "the payment of specified pass-through royalties to" the owner.  604 F.3d at 1358, 1362.  Moreover, *Mann* only analyzes the division of exclusionary rights between two entities—a patent owner and exclusive licensee—and does not address the issue presented here: whether a third entity holding an unfettered right to sublicense an accused infringer vitiates a plaintiff-owner's right to exclude that infringer and thereby deprives plaintiff of standing. *Id*. at 1359–60.  *Mann* does not hold that a patent owner can side-step the constitutional requirement of holding the right to exclude—rather, the court expressly states that where a party is "permitted to sublicense defendants sued by [the patent owner]" such that the patent owner's right to sue those defendants is "render[ed] illusory," as here, the patent owner lacks standing to sue.  *Id*. at 1362.

> ### b.      Uniloc USA lacked constitutional standing to sue Motorola because Uniloc Lux could not convey "exclusive" rights in the patent-in-suit to Uniloc USA

It is similarly irrelevant that the Lux-to-USA License purported to grant "exclusive" rights to Uniloc USA.  (Conway Decl., Ex. L, § 1).  Use of the word "exclusive" in an agreement is not a magic totem: for standing purposes, it is the substance of the rights held, not their form, that governs. *See Fairchild Semiconductor Corp. v. Power Integrations, Inc*., 630 F. Supp. 2d 365, 371 (D. Del. 2007) (holding that licensee who had been granted "sole and exclusive right . . . to enforce the Patents" did not have standing).  Here, at the time Plaintiffs executed the Lux-to-USA License on May 26, 2017, Fortress already possessed the right to grant sublicenses to any patents owned by Uniloc Lux because the Events of Default had already occurred.  Fortress's rights attached to the patent-in-suit when Uniloc Lux acquired it on May 16, 2017.  (*See* Conway Decl., Ex. D, 66:22–67:5, 71:21– 72:1).  Thus, as of May 26, 2017 and through the filing of the Original Complaint,

---

ability to sublicense to affiliates and to particular products. (Conway Decl., Ex. K).  But

Uniloc Lux did not itself have an exclusive right to license the patent-in-suit.  Because "an owner or licensee of a patent cannot convey that which it does not possess," *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000), Uniloc Lux could not have conveyed exclusive rights to Uniloc USA before the filing of the Original Complaint.  In other words, Uniloc Lux could not have granted Uniloc USA "exclusive" rights in the patent-in-suit because Uniloc Lux itself could not "promise that others shall be excluded from practicing the invention within [the relevant] territory," *Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995).

Plaintiffs and Fortress may not have appreciated that granting Fortress such broad rights would undermine Plaintiffs' standing to sue potential infringers. But the parties' agreements are deliberate and clear.  "While parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements." *Morrow*, 499 F. 3d at 1341 n.8.  Plaintiffs' chosen division deprived them of standing to sue, and their case should be dismissed for lack of subject matter jurisdiction.

### B. Plaintiffs Cannot Cure Their Lack of Standing With a Rule 25(c) Motion to Substitute, or Any Other Procedural Tactic

Plaintiffs' lack of standing at the time the Original Complaint was filed is a fatal problem. It is black-letter law that a standing defect that existed at the outset of a case cannot be cured.  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005); *see also* Fed R. Civ. P. 12(h)(3).  As described above, Plaintiffs, even in combination, lacked standing at the time they filed suit.  Plaintiffs cannot cure their lack of standing at the time the Original Complaint was filed by filing a Motion to Substitute Uniloc 2017 as Plaintiff pursuant to Fed. R. Civ. P 25(c), as they are attempting to do now.  (*See* D.I. 50).  "[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with

---

Plaintiffs agreed not to restrict Fortress's rights in this way.

standing . . . nor by the subsequent purchase of an interest in the patent in suit." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005).

### C. This Action Should be Dismissed With Prejudice Because Plaintiffs Misrepresented and Concealed Their Standing Problems for Months

As set forth above, this action should be dismissed for lack of subject matter jurisdiction. And, because Plaintiffs concealed the relevant facts for months, that dismissal should be with prejudice. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) ("District court judges, confronted with litigants who flagrantly violate or ignore court orders, often have no appropriate or efficacious recourse other than dismissal of the complaint with prejudice.").

In order to dismiss with prejudice, the Third Circuit weighs the six factors outlined in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d. 863, 868 (3d Cir. 1984). These factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

(*Id.*). "[C]omplete satisfaction of each *Poulis* factor [is not required] in order to justify the sanction of dismissal [with prejudice]." *Adegbuji v. Middlesex Cty.*, 347 F. App'x 877, 881 (3d Cir. 2009). In *Poulis*, for example, the court found three of the six factors sufficient to dismiss the case with prejudice. *Poulis*, 747 F. 2d at 870. Here, all six factors weigh in favor of dismissal with prejudice.

### 1. Plaintiffs were responsible for withholding relevant information

There is no indication in this case that Plaintiffs' misconduct and withholding of documents related to these standing issues should be attributed to Plaintiffs' counsel, rather than Plaintiffs' own direction. This factor weighs in favor of dismissal with prejudice.

### 2.   Motorola has been prejudiced by Plaintiffs' misconduct

Plaintiffs' failure to comply with their discovery obligations wasted Motorola's time and resources.  Discovery in this case opened on June 19, 2018, after the parties held their Rule 26(f) conference.  (Conway Decl., ¶ 3).  Although Uniloc 2017 was assigned the patent-in-suit more than a month before discovery opened, Plaintiffs induced Motorola to seek discovery from the wrong entities for three months, even serving two sets of disclosures on Motorola that affirmatively asserted the named Plaintiffs as proper and cited no other potential parties.  (*Id.*, Exs. O, P).  Plaintiffs' disclosures failed to so much as mention Uniloc 2017, let alone disclose its ownership of the patent-in-suit.  (*Id.*).  On July 30, 2018, Motorola served interrogatories and requests for production seeking discovery on ownership of the various rights and interests in the patent-in-suit.  For instance, Motorola's Request for Production No. 9 sought the production of "All Documents and Communications Relating to any planned, contemplated, proposed, requested, or actual licensing, assignment, acquisition, or transfer of ownership or other rights in the Patent-in-Suit . . . ." (Conway Decl., Ex. Q).  Yet Plaintiffs did not produce the Fortress License until November 7, 2018.  (*Id.*, ¶ 7).  Instead, Plaintiffs inaccurately represented that the documents they had previously produced "are sufficient to establish which entities own which rights, and etc."  (Conway Decl., Ex. S, 11/2/2018 Jacobs ltr. to Conway).  Not only has Motorola been taking discovery of entities that Plaintiffs now assert do not even own the patent-in-suit, but Motorola has been forced to litigate a case over which this Court does not have jurisdiction.  Thus, this factor weighs in favor of dismissal with prejudice.

### 3.   Plaintiffs have demonstrated a history of dilatoriness and bad faith

Regarding *Poulis* factors 3 and 4, Plaintiffs repeatedly misrepresented rights in the patent-in-suit, and delayed producing relevant documents.  First, Plaintiffs did not disclose that they had

granted rights in the patent-in-suit to Fortress.  Nor did they disclose the nature of that grant, which gave Fortress a largely unfettered right to transfer or sublicense its rights to practice the patent-in-suit upon occurrence of an Event of Default. (Conway Decl., Ex. B, §§ 2.1, 8).  Second, Plaintiffs did not disclose that on March 28, 2018, Uniloc Lux agreed to assign the patent-in-suit to Uniloc 2017 and to terminate both the Lux-to-USA License and the Fortress License, and that the assignment and termination formally occurred on May 3, 2018.  (*Id.*, Exs. N, J).  Plaintiffs waited four months to disclose to Motorola that Uniloc 2017 was the owner of the patent-in-suit.  In the meantime, Plaintiffs served two sets of disclosures identifying Uniloc Lux and Uniloc USA as the "correct names of the Plaintiffs" and solely identifying officers of Uniloc Lux and Uniloc USA as witnesses with relevant knowledge.  (*Id.*, Exs. O, P).

At no time did Plaintiffs ever voluntarily take action to bring any information regarding the ownership of and rights in the patent-in-suit to Motorola's or the Court's attention.  Indeed, the issue became clear only when, in the Apple Litigation, the court in that case ordered Uniloc to produce to Apple all documents regarding the ownership of the patent-in-suit.  (Conway Decl., Ex. T, 18:21–24).  Motorola then reiterated its demand that Plaintiffs produce all materials regarding the transfer of ownership of, or interests in, the patents, including those they had been ordered to produce to Apple—the same materials Motorola had requested months earlier in discovery.  (Conway Decl., Ex. R).  On November 7, after multiple entreaties from Motorola's counsel, Plaintiffs finally produced the Fortress License.  It was only then that Motorola learned, for the first time, that Fortress had possessed a largely unfettered right to sublicense the patent-in-suit when Plaintiffs had filed the Original Complaint.  Absent these efforts, Plaintiffs apparently planned to induce the Court to proceed full steam ahead into summary judgment or trial.[4]

---

[4] The deadline to add new parties or amend pleadings passed on September 19, 2018.  (D.I. 46).

### 4. Dismissal with prejudice is the only appropriate sanction

There is no appropriate sanction other than a dismissal with prejudice for Uniloc's misconduct. The Third Circuit has recognized that dismissals with prejudice "should be reserved" for cases where there has been "'flagrant bad faith' on the part of the plaintiffs." *Poulis,* 747 F.2d at 867–68. Here, dismissal with prejudice is the only effective remedy because Plaintiffs misrepresented standing to the Court and withheld documents relating to standing for months. *See Shahin v. Delaware*, No. CIV. A. 07-452-GMS, 2009 WL 485168, at *1 (D. Del. Feb. 26, 2009) ("In certain cases, dismissal [with prejudice] is a necessary tool to punish parties who fail to comply with the discovery process and to deter future abuses.").

### 5. Motorola's defense is meritorious

A defense is meritorious when the allegations, "if established at trial . . . would constitute a complete defense." *Id.* at 870. Motorola's contentions in this Motion meet this standard. As set forth above, Plaintiffs lacked constitutional standing at the time the Original Complaint was filed, and cannot cure their lack of standing here; thus, this case should be dismissed pursuant to Fed. R. Civ. P 12(b)(1). All six *Poulis* factors weigh in favor of dismissal with prejudice.

## VI.   CONCLUSION

For the reasons set forth above, Motorola respectfully requests that the Court dismiss this action with prejudice for lack of subject matter jurisdiction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jtigan@mnat.com

OF COUNSEL:

Martha Jahn Snyder
Carly S. Conway
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

*Attorneys for Defendant*
*Motorola Mobility, LLC*

Louis A. Klapp
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Tel: (312) 715-2712

December 26, 2018

### CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 26, 2018, upon the following in the manner indicated:

Sean T. O'Kelly, Esquire                                    *VIA ELECTRONIC MAIL*
O'KELLY ERNST & JOYCE, LLC
901 North Market Street, Suite 1000
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Hayes, Esquire                                    *VIA ELECTRONIC MAIL*
Kevin Gannon, Esquire
James J. Foster, Esquire
Aaron Jacobs, Esquire
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA  02110
*Attorneys for Plaintiff*

*/s/ Jeremy A. Tigan*
Jeremy A. Tigan (#5239)