IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-1658 (CFC) |
| MOTOROLA MOBILITY, LLC, | ) ) | **FILED UNDER SEAL** |
| Defendant. | ) ) | |

## MOTOROLA MOBILITY, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:

Martha Jahn Snyder
Carly S. Conway
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

Louis A. Klapp
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Tel: (312) 715-2712

*Attorneys for Defendant*
*Motorola Mobility, LLC*

January 16, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Defendant*
*Motorola Mobility, LLC*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 2

   A.   Plaintiffs Lacked Article III Standing at the Time of Filing ............................... 2

      1.   *Mann* does not support Plaintiffs' standing argument .................................... 2

      2.   Proper application of the law establishes that Plaintiffs lacked standing ....................... 4

      3.   Plaintiffs' inadmissible parol evidence cannot contradict the unambiguous terms of the Fortress agreements ........................................................................................... 6

   B.   Dismissal with Prejudice Is Appropriate ......................................................... 8

      1.   Plaintiffs concealed the Fortress License long after its relevance was evident .............. 9

      2.   Plaintiffs concealed assignment of the '134 Patent to Uniloc 2017, disrupting Motorola's ability to take discovery of the proper parties ............................................ 10

III.  CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay v. Activision Blizzard*, No. 16-453-RGA, 2017 WL 3668597 (D. Del. Aug. 24, 2017) ............................................................................................................. 5, 6

*Alexandria Coca-Cola Bottling Co. v. Coca-Cola Co.*, 637 F. Supaelp. 1220 (D. Del. 1984) ...... 6

*Alfred E. Mann Foundation for Science v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) ……..…………………………………………………………………………………………1, 2, 3, 4

*Aspex Eyewear v. Miracle Optics*, 434 F.3d 1336 (Fed. Cir. 2006) ........................................... 3, 4

*AssymetRx, Inc. v. Biocare Medical, Inc.*, 582 F.3d 1314 (Fed. Cir. 2009) ................................. 4

*Jarecki v. Shung Moo Louie*, 745 N.E.2d 1006 (2001)............................................................. 6, 7

*Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343 (Fed. Cir. 2016)............... 2, 3, 4

*Morrow v. Microsoft*, 499 F.3d 1332 (Fed. Cir. 2007) .................................................................. 3

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967 (Fed. Cir. 2017). 9

*Prima Tek LLC v. A-Roo Co.*, 22 F.3d 1372 (Fed. Cir. 2000) ....................................................... 4

*Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376 (S.D.N.Y. 2002).......................... 8

*WiAV Sols. LLC v. Motorola*, 631 F.3d 1257 (Fed. Cir. 2010) ........................................ 2, 3, 4, 5

## I.      INTRODUCTION

Motorola Mobility LLC's ("Motorola") Motion to Dismiss (D.I. 56–58) established, based on the unambiguous language of Plaintiffs' licensing agreements, the following facts:

- When triggered, third-party Fortress Credit Co. LLC's ("Fortress") sublicensing right allowed Fortress to sublicense any of Plaintiffs' patents, including U.S. Patent No. 6,161,134 ("the '134 Patent"), in Fortress's "sole and absolute discretion." (D.I. 57, 2–4).

- Fortress's sublicensing right would be triggered automatically upon the occurrence of an "Event of Default," without any action or interpretation by Fortress. (*Id.* at 4).

- An "Event of Default" included Plaintiffs' failure to generate $20 million in patent-monetization revenue in the four-quarter period ending March 31, 2017. (*Id.* at 4–5).

- Plaintiffs failed to generate at least $20 million as of March 31, 2017, and also failed to generate $20 million as of at least June 30, 2017. (*Id.*).

- Fortress never waived an Event of Default in writing, nor did any amendment to the Revenue Sharing Agreement ("RSA") waive or cure any Event of Default. (*Id.* at 6).

Plaintiffs dispute ***none*** of these facts in their Opposition (D.I. 67). Fortress held an unfettered right to grant any party—including Motorola—a license to the '134 Patent. Because Fortress held this right at the time of filing, Plaintiffs lacked the right to exclude Motorola from the alleged infringement—a prerequisite for standing. Plaintiffs' only support for their claim of standing hinges on inadmissible parol evidence, and a misinterpretation of *Alfred E. Mann Foundation for Science v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010). (*See* Opp., 4–7).

Because Plaintiffs lacked standing at the time of filing, their case must be dismissed, and dismissal should be with prejudice. Plaintiffs repeatedly misrepresented their rights in the '134 Patent, and concealed evidence reflecting the true division of those rights. Plaintiffs provide no explanation for this conduct, and instead improperly attempt to import an attorney declaration into their brief. (*See* Opp., 11; Foster Decl.). The declaration explains only that Plaintiffs paid no attention to the terms of their agreements with Fortress and misunderstood the legal significance of the rights they had granted. (*Id.*). This is no excuse—dismissal with prejudice is appropriate.

## II.    ARGUMENT

### A.  Plaintiffs Lacked Article III Standing at the Time of Filing

Plaintiffs do not contest that the right to exclude is an absolute prerequisite for standing. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1347 (Fed. Cir. 2016) ("[O]nly parties with exclusionary rights to a patent may bring suit for patent infringement."). And Plaintiffs do not explain how a plaintiff can have the right to exclude an accused infringer if another party has an unfettered right to extend a license to that accused infringer. *See WiAV Sols. LLC v. Motorola*, 631 F.3d 1257, 1266 (Fed. Cir. 2010) (plaintiff "lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."). Here, the express language of the Fortress License and RSA gave Fortress an unfettered right to sublicense Motorola at the time Plaintiffs sued Motorola for alleged patent infringement. This eliminated Plaintiffs' right to exclude Motorola from practicing the '134 Patent. *See Luminara*, 814 F.3d at 1348 (plaintiff lacks standing to sue if a third party has an unfettered right to sublicense the accused infringer). While Plaintiffs acknowledged that constitutional standing requires the plaintiff to have suffered an injury-in-fact from the defendant's infringement (Opp., 2), Plaintiffs do not argue that they suffered—or even could have suffered—such an injury. Instead, Plaintiffs' rebuttal turns on a specious legal theory and inadmissible parol evidence.

#### 1.   *Mann does not support Plaintiffs' standing argument*

Plaintiffs cast aside the fundamental principles of standing based on a misreading of a single Federal Circuit case. *Mann* only analyzed the division of exclusionary rights between two entities—a patentee and exclusive licensee—not the issue presented here: whether a ***third*** entity holding an ***unfettered*** right to grant a sublicense to an accused infringer vitiates a plaintiff-owner's right to exclude that infringer. *See* 604 F.3d at 1359–60. Nothing in *Mann* "clarif[ied]" or changed the requirement that a plaintiff must hold exclusionary rights to have constitutional

2

standing. *See*, *e.g.*, *Morrow v. Microsoft*, 499 F.3d 1332, 1340–41 (Fed. Cir. 2007); *Luminara*, 814 F.3d at 1347; *WiAV*, 631 F.3d at 1265. *Mann* does not cite *Morrow*, let alone distinguish it. Subsequent case law continues to require a plaintiff to hold exclusionary rights to have constitutional standing to sue. *See*, *e.g.*, *Luminara*, 814 F.3d at 1347 (citing both *Mann* and *Morrow*).

Even if *Mann* were relevant, it would not support Plaintiffs' argument. Plaintiffs read *Mann* as establishing a "default rule" that there "generally always" must be one entity that is a "CATEGORY ONE" plaintiff—that is, a plaintiff with standing to sue on its own. (Opp., 7–8). This "default" rule has no support in *Mann*, which held that there cannot be ***more than one*** entity with the right to sue on its own. 604 F.3d at 1359 ("[A] patent may not have multiple separate owners for purposes of determining standing to sue."). But it does not follow that there ***must be one*** entity with that right. (Opp., 7). *Mann* did not consider, much less resolve, that issue.

Further, nothing in *Mann* supports Plaintiffs' theory that a party maintains "CATEGORY ONE" status "unless and until he transfers 'all substantial rights' to another." (Opp., 7). *Mann* stands for ***the opposite*** proposition: when "all substantial rights" are divided between a patent owner and exclusive licensee, it may be that ***neither*** has "CATEGORY ONE" status that would enable one to sue in its name alone. The Federal Circuit held that, where an agreement conveys some, but not all, substantial rights to the patent-in-suit, it operates as an exclusive license rather than an as assignment. *Mann*, 604 F.3d at 1363. And the patent owner that conveys those rights does ***not*** retain the right to sue ***on its own***. *See Aspex Eyewear v. Miracle Optics*, 434 F.3d 1336, 1344 (Fed. Cir. 2006) ("For the same policy reasons that a patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee."). *Mann* establishes that a patentee who no longer possesses "all substantial rights" is not a "CATEGORY ONE" plaintiff but—at most—a "CATEGORY TWO" plaintiff who cannot sue in its name, alone. And

3

Plaintiffs concede that "CATEGORY TWO status requires exclusivity." (Opp., 9). Plaintiffs lacked exclusivity because of Fortress's unfettered right to sublicense the '134 Patent.

Nor does *Mann* support Plaintiffs' argument that "a right to sublicense" cannot deprive a patent owner of standing. (Opp., 7–9). Instead, *Mann* recognized that an unfettered sublicensing right could vitiate a patent owner's exclusionary rights. 604 F.3d at 1362; (D.I. 57, 14–15). The sublicensing right in *Mann*, however, was fettered: any sublicense was required to include "the payment of specified pass-through royalties to" the owner. 604 F.3d at 1358, 1362. So too was the sublicensing right in *Aspex*—although the appellees argued that the right to sublicense was "virtually unfettered," the Federal Circuit disagreed, finding that the "dominant factor" was the "provision limiting the term of the license." 434 F.3d at 1342–43; *see also AssymetRx, Inc. v. Biocare Medical, Inc.*, 582 F.3d 1314, 1320 (Fed. Cir. 2009) (licensee's sublicense rights limited by royalty sharing requirement).[1] Neither *Mann* nor any of the other cases cited by Plaintiffs eliminate the constitutional requirement of holding the right to exclude.

Lastly, Plaintiffs' argument is contradicted by their pleadings, which allege that ***Uniloc USA***, not Uniloc Lux, held "all substantial rights" in the '134 Patent. (*See* D.I. 1, ¶ 9; D.I. 10, ¶ 6). But Plaintiffs' theory of standing turns on their contention that ***Uniloc Lux*** never lost "CATEGORY ONE" status because it never transferred all substantial rights. (Opp., 3, 7, 9–10).

### 2.  *Proper application of the law establishes that Plaintiffs lacked standing*

The Federal Circuit has indicated that a plaintiff lacks standing when a third party has an unfettered right to grant sublicenses to the defendant. *See*, *e.g.*, *WiAV*, 631 F.3d at 1266; *Luminara*, 814 F.3d at 1347. Contrary to Plaintiffs' assertions, and as confirmed by Judge Andrews in this District, these holdings are not dicta: "I do not think it is dicta . . . I think the

---

[1] *Prima Tek LLC v. A-Roo Co.* is irrelevant; the court dismissed the case for lack of standing because the licensee did not hold all substantial rights; the court did not hold that a party could sue absent exclusionary rights. 22 F.3d 1372, 1382 (Fed. Cir. 2000).

implication was that if the third parties had the ability to issue a license to defendants, then the plaintiff would not have standing to sue." *See Acceleration Bay v. Activision Blizzard*, No. 16-453-RGA, 2017 WL 3668597, at \*3 (D. Del. Aug. 24, 2017) (citing *WiAV*, 631 F.3d at 1267–68).

In *Acceleration Bay*, Boeing assigned patents to the plaintiff, but had previously granted a non-exclusive license to Sony that included the right to sublicense Sony's publishers within a certain field of use. *Id.* at \*1–3. The defendants were Sony publishers within that field of use. *Id.* at \*1. Because Sony had the right to license the defendants in the relevant field, the Court determined that the plaintiff "ha[d] not shown that it had the right under the patents to exclude the Defendants from engaging in the alleged infringing activity," and thus the plaintiff "lack[ed] standing to sue Defendants with respect to games covered by the Sony license." *Id.* at \*3.

Fortress's right to sublicense dictates the same result here. When Plaintiffs sued Motorola, Fortress held an unfettered right to sublicense the '134 Patent to Motorola because at least one Event of Default had already occurred. (D.I. 57, 3–5). Plaintiffs cannot dispute that, upon the occurrence of such an event, the Fortress License and RSA expressly and automatically vested Fortress with this right. Thus, here, as in *Acceleration Bay*, a third party held a non-exclusive license that gave it the right to license the patent-in-suit, and that right extended to the accused infringer at the time suit was filed. And Fortress's sublicensing right is even broader than Sony's in *Acceleration Bay*, as Fortress's right is not limited to a field of use.

Plaintiffs complain that requiring exclusionary rights for standing to sue would render their patent unenforceable. (Opp., 10). But this is a predicament of Plaintiffs' own making. They expressly granted Fortress a right to sublicense the '134 Patent that: (1) ***automatically vested*** upon the occurrence of any "Event of Default," as Plaintiffs had chosen to define that term; and (2) once vested, placed ***virtually no restrictions*** on whom Fortress could license, or on what

5

terms.[2] If Plaintiffs had wanted Fortress's right to be narrower, they knew how to accomplish that. (*See*, *e.g.*, D.I. 58, Ex. A, RSA §§ 7.2.2, 7.2.3) (other remedies required Fortress to provide "notice in writing"). Regardless of whether Plaintiffs appreciated the consequences of granting Fortress an unfettered, automatically triggered right, they cannot dispute that the parties fully intended to—and in fact did—grant such a right. *See Acceleration Bay,* 2017 WL 3668597, at *3 ("[A] patentee should not be allowed to enforce that which it surrendered.").

### 3. *Plaintiffs' inadmissible parol evidence cannot contradict the unambiguous terms of the Fortress agreements*

Plaintiffs offer a declaration from James Palmer, a Fortress employee, in an attempt to contradict the express language of the Fortress agreements with inadmissible parol evidence. (Opp., Palmer Decl.). The Fortress License and RSA each contain a merger clause that states that the contract at issue represents the "entire understanding of the parties." (Conway Decl., Ex. U, RSA § 9.9; D.I. 58, Ex. B, Fortress License § 9). Under New York law, a merger clause "bar[s] the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing." *Jarecki v. Shung Moo Louie*, 745 N.E.2d 1006, 1009 (2001).[3] New York law thus precludes Plaintiffs from using Mr. Palmer's testimony to contradict the bargain that they struck.

***First***, Mr. Palmer attempts to contradict the RSA's unambiguous language that an "Event of Default" would occur if Plaintiffs failed to generate at least $20 million in patent monetization revenue for the period ending March 31, 2017. (Palmer Decl., ¶¶ 10–14; D.I. 58, Ex. A, §§ 6.2.2, 7.1.2). Plaintiffs do not contend that this language is unclear, nor do they dispute that they did

---

[2] The sublicense could not impose "financial obligations or restrictions on [Plaintiffs]" without Plaintiffs' prior consent. (D.I. 58, Ex. B, Fortress License § 2.2). This posed no limitation on Fortress's ability to license to Motorola.

[3] The Fortress License and RSA are each governed by New York law. (Conway Decl., Ex. U, § 9.9; D.I. 58, Ex. B, § 12); *see VSI Sales v. Int'l Fid. Ins.*, No. CV 15-507-GMS, 2015 WL 5568623, at *2 (D. Del. Sept. 22, 2015); *see also Alexandria Coca-Cola Bottling Co. v. Coca-Cola Co.*, 637 F. Supp. 1220, 1226 n.34 (D. Del. 1984) (the parol evidence rule is a substantive, not procedural, rule of contract law).

not generate the required revenue. Instead, Plaintiffs point to Mr. Palmer's testimony to support that, despite the failure to generate the specified revenue, Fortress did not treat or view Uniloc as having defaulted and thus, there was no Event of Default. (Opp., 4; Palmer Decl., ¶¶ 10–14). The parol evidence rule prohibits using testimony in this way. *Jarecki*, 745 N.E.2d at 1009.

**Second**, Mr. Palmer contradicts the RSA's provision that an Event of Default would continue to exist unless it was waived or cured, pursuant to Section 7.3. (Palmer Decl., ¶ 12; D.I. 58, Ex. A, § 7.3). And an amendment could not cure or waive an Event of Default unless it did so "by its express terms." (*Id.*). No amendment to the RSA contained express language that cured or waived an Event of Default, and Plaintiffs do not suggest otherwise. The parol evidence rule bars Mr. Palmer from now contradicting Section 7.3 by testifying that the May 15, 2017 Amendment or Fortress's decision to extend the loan somehow cured or "annulled" an Event of Default by other means. (Palmer Decl., ¶ 12). Further, any claim that the parties' course of dealing waived or cured an Event of Default is foreclosed by the express language of the RSA: "[N]o course of dealing between [Fortress] and [Uniloc Lux and Uniloc USA] shall operate as a waiver of any [Fortress's] rights under this Agreement . . . ." (Conway Decl., Ex. U, § 9.4.2.).

**Third**, Mr. Palmer's testimony regarding Plaintiffs' representations and warranties is likewise inadmissible. (Palmer Decl., ¶¶ 15–21). The RSA explicitly states that the representations and warranties in Article IV were made "[i]n order to induce [Fortress]" to enter into its agreements with Plaintiffs. (D.I. 58, Ex. A, Art. IV). The parol evidence rule bars Mr. Palmer from now disparaging these representations and warranties as mere "standard" language that Fortress did not actually rely upon or even believe. (Palmer Decl., ¶¶ 6, 17, 19). Nor can Mr. Palmer claim that the parties' course of dealing is evidence that Fortress did not care about Plaintiffs' representations. The Third Amendment to the RSA expressly stated that, through this amendment, Plaintiffs reaffirmed their original representations—which included

those about patent validity and validity challenges—as of May 15, 2017. (D.I. 58, Ex. C, § 3.02). Plaintiffs cannot now contend that Fortress never intended to hold Plaintiffs to their word.

*Fourth*, Mr. Palmer's opinions on the "materiality" of Plaintiffs' misrepresentations are irrelevant and implausible. (Palmer Decl., ¶¶ 16–21). As of December 30, 2014, Plaintiffs had generated ███████ in licensing revenue (Conway Decl., ¶ 7), of which at least ████████ (████) had come from licensing a single patent, U.S. Patent No. 5,490,216 ("the '216 Patent"). (*Id.*; Conway Decl., Ex. V, Microsoft License). When the RSA was first executed on December 30, 2014, the validity of the '216 Patent was already subject to two different challenges. (Conway Decl., Ex. W, IPR2014-01453; Ex. X, IPR2015-00178). Plaintiffs' representation that no such challenges existed was therefore untrue. (D.I. 58, Ex. A, § 4.5). Mr. Palmer's testimony that Fortress did not mean this misrepresentation to trigger an Event of Default because "defendants . . . almost universally assert invalidity" is inadmissible parol evidence. (Palmer Decl., ¶ 20). Further, the challenges in question impacted the source of over ███ of all revenue Plaintiffs had ever generated. That Fortress would not have considered a misrepresentation impacting ███ of the collateral on a multimillion-dollar loan "material," is both unsupported and implausible.

*Finally*, Mr. Palmer does not claim to have personal knowledge of any of the allegations in his declaration, nor does he include any documentary support. (*See* Palmer Decl.). Even if extrinsic evidence could be considered here, Mr. Palmer's unsubstantiated testimony is self-serving and partial, as he is employed by a party prone to bias—Fortress stands to benefit should Plaintiffs prevail. His statements cannot outweigh the clear language of the Fortress agreements. *See Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002).

### B.  Dismissal with Prejudice Is Appropriate

Plaintiffs concealed for months their transfer of rights in the '134 Patent to Fortress and

their assignment of the '134 Patent to a third party. Dismissal with prejudice is appropriate where, as here, the plaintiff has withheld and made misrepresentations about standing and ownership. *See Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 972 (Fed. Cir. 2017) (affirming dismissal with prejudice for lack of standing where patentee "did not present a consistent picture of ownership" and "at no point even made an attempt to explain the blatant inconsistencies in its previous positions on standing").

### 1.   *Plaintiffs concealed the Fortress License long after its relevance was evident*

Rather than arguing against dismissal with prejudice, Plaintiffs merely offer a declaration from their counsel, James Foster, in an attempt to justify withholding the Fortress License for months, until November 7, 2018. (Opp., Foster Decl.). It does not excuse Plaintiffs' misconduct.

Mr. Foster claims that Plaintiffs did not know the Fortress License was relevant until October 25, when he was "surprised" by Apple filing a motion to dismiss for lack of standing in a related litigation asserting the '134 Patent against Apple (*Uniloc USA, Inc. v. Apple Inc*., D.I. 135, No. 3:18-cv-00360-WHA (N.D. Cal.), "Apple Litigation"). (Foster Decl., ¶ 11). Yet, two months earlier, on August 21, Apple filed a discovery letter brief "regarding a foundational dispute in this patent case: who the proper parties are and whether Plaintiffs have Article III standing."[4] (Apple Litigation, D.I. 117). The brief sought "full discovery" relating to ownership, licensing, and transfer of rights in the patents-in-suit, including the '134 Patent. (*Id*., 1–2). At a hearing on September 4, Plaintiffs were ordered to "produce all of this material . . . every single document, no redactions, so that the other side can trace the bundle of rights that every entity has or retained or assigned, how it got split up." (D.I. 58, Ex. T, 9:12–16). Mr. Foster even represented Erez Levy, Fortress's Managing Director, at his deposition on September 21, where

---

[4] The Fortress License was also responsive to Motorola's discovery requests (served July 30, 2018) on financial interests in the patent. (D.I. 57, 7; Opp'n Mot. Sub., D.I. 59, 3–4).

he testified on the Uniloc-Fortress relationship, and ownership of the asserted patents, including the Fortress License. (*See*, *e.g.*, D.I. 58, Ex. D). Apple's motion on October 25 was not a surprise, but the culmination of months of discovery efforts and court intervention.[5]

### 2. Plaintiffs concealed assignment of the '134 Patent to Uniloc 2017, disrupting Motorola's ability to take discovery of the proper parties

Mr. Foster also fails to justify the two sets of disclosures in which Plaintiffs neglected to even mention Uniloc 2017, months after the '134 Patent was allegedly assigned to Uniloc 2017. (D.I. 57, 7). Rule 25(c) provides that an action "may be continued by or against the original party" if an interest is transferred. This does not mean, as Mr. Foster suggests, that the original parties have no duty to disclose information relating to the transfer, or that it occurred at all. (Foster Decl., ¶ 7). Rule 26(a) disclosures and Delaware's Paragraph 3 disclosures both require identification of individuals likely to have discoverable information and the subject matter of that information. Yet Plaintiffs' disclosures failed to reflect the assignment of the '134 Patent to Uniloc 2017. (D.I. 58, Exs. O, P). Rule 25(c) does not permit Plaintiffs to withhold relevant, responsive information, or to induce Motorola to seek discovery from the wrong entities for months.

## III.    CONCLUSION

Motorola respectfully requests the Court dismiss this action with prejudice.

---

[5] Even after Apple's motion to dismiss, Plaintiffs still represented that they had produced documents "sufficient to establish which entities own which rights, and etc." before finally producing the Fortress license. (D.I. 58, Ex. S).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jtigan@mnat.com

*Attorneys for Defendant*
*Motorola Mobility, LLC*

OF COUNSEL:

Martha Jahn Snyder
Carly S. Conway
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI  53703
(608) 251-5000

Louis A. Klapp
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Tel: (312) 715-2712

January 16, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 16, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Sean T. O'Kelly, Esquire | *VIA ELECTRONIC MAIL* |
| O'KELLY ERNST & JOYCE, LLC | |
| 901 North Market Street, Suite 1000 | |
| Wilmington, DE  19801 | |
| *Attorneys for Plaintiff* | |
| | |
| Paul J. Hayes, Esquire | *VIA ELECTRONIC MAIL* |
| Kevin Gannon, Esquire | |
| James J. Foster, Esquire | |
| Aaron Jacobs, Esquire | |
| PRINCE LOBEL TYE LLP | |
| One International Place, Suite 3700 | |
| Boston, MA  02110 | |
| *Attorneys for Plaintiff* | |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)