# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC USA, INC.; and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | No. C 18-00360 WHA <br> No. C 18-00363 WHA <br> No. C 18-00365 WHA <br> No. C 18-00572 WHA <br><br> **ORDER ON MOTION TO DISMISS AND MOTION TO JOIN PARTY** |

### INTRODUCTION

Defendant accused infringer in four related patent infringement actions moves to dismiss on the basis that plaintiffs lack standing. Plaintiffs move to join a new patentee to cure any jurisdictional defect. For the reasons stated below, the motion to dismiss is **DENIED** and the motion to join is **GRANTED**.

### STATEMENT

In the four above-captioned actions, plaintiffs Uniloc Luxembourg, S.A., and Uniloc USA, Inc., asserted multiple claims for patent infringement against defendant Apple Inc. in 2017. The instant motions involve a complicated series of transactions plaintiffs used to allocate their rights in the patents-in-suit. Apple contends that these transactions left no plaintiff with constitutional standing and thus moves to dismiss for lack of subject-matter jurisdiction. The relevant facts are as follows.

Each of these waning patents issued long ago to non-party Hewlett-Packard Enterprise Development Company LP ("HP"). On May 16, 2017, HP assigned them to Uniloc

1 Luxembourg.  Ten days later, Uniloc Luxembourg granted an exclusive license to Uniloc USA.
2 On that very day (and through August 2, 2017), both Uniloc Luxembourg and Uniloc USA
3 together filed the above-captioned actions against Apple in the Eastern District of Texas, only
4 to have their suits transferred here (Dkt. Nos. 38, 120, 134-15, 134-16).[1]

5 Discovery herein revealed two sets of further problematic transactions.

6 The first set centered on loan agreements with non-party lender Fortress Credit Co LLC.
7 In December 2014, plaintiffs entered into two relevant agreements with Fortress in order to
8 finance their litigation offensives.  Specifically, plaintiffs and Fortress entered into (1) a
9 Revenue Sharing and Note and Warrant Purchase Agreement ("Revenue Sharing Agreement"),
10 and (2) a Patent License Agreement ("Fortress License").  Plaintiffs also granted Fortress a
11 security interest in plaintiffs' patents so that Fortress might protect itself in case plaintiffs
12 underperformed on the contract.  The Revenue Sharing Agreement was later amended three
13 times, with the final amendment occurring on May 15, 2017 (Dkt. Nos. 134-7, 134-8, 134-12).

14 The Revenue Sharing Agreement listed various "Events of Default," such as target
15 revenue amounts for plaintiffs.  The Fortress License granted Fortress the right to, *inter alia*,
16 sublicense plaintiffs' patents.  Fortress's right to use the license, however, could only be used
17 upon an event of default (Dkt. No. 134-8 § 2.1).

18 The second set of problematic transactions involved another non-party — Uniloc 2017
19 LLC (yet another Uniloc entity).  On May 3, 2018, plaintiffs terminated the license between
20 Uniloc Luxembourg and Uniloc USA.  That same day, Uniloc Luxembourg also assigned the
21 patents-in-suit to Uniloc 2017 (Dkt. Nos. 134-14, 135-15).

22 Uniloc 2017 subsequently entered into two relevant licensing agreements with (1)
23 Uniloc USA, and (2) Uniloc Licensing USA LLC.  These licenses granted Uniloc USA and
24 Uniloc Licensing only the exclusive right to sue on the patents-in-suit:  Uniloc USA was given
25 the right to sue with respect to pre-existing litigation matters and Uniloc Licensing was given
26 the right to sue with respect to all other litigation matters.  Uniloc 2017 also granted non-party

---

[1] The docket numbers referenced herein relate to Case No. C 18-00360 WHA.  All record citations herein are to the unredacted versions of the documents cited.

CF Uniloc Holdings LLC rights that allegedly affected Uniloc 2017's control of the enforcement of the patents-in-suit (Dkt. Nos. 134-18; 134-19; 134-20 § 1(a)–(c); 134-22 § 4.9(b); 134-23 § 5.6(s)).

Apple now moves to dismiss on two separate grounds. *First*, Apple contends that plaintiffs lacked standing when they filed the above-captioned actions. Specifically, Apple asserts that plaintiffs defaulted on the Revenue Sharing Agreement and thus Fortress had acquired the unfettered right to sublicense the patents-in-suit to Apple at the time of the filings, thereby undermining plaintiffs' right to exclude. *Second*, Apple contends that, even assuming plaintiffs had standing when they filed suit, adding Uniloc 2017 to re-establish subject-matter jurisdiction (now that Uniloc Luxembourg indisputably lacks standing) would be futile due to licensing machinations via Uniloc 2017. This order follows full briefing and oral argument.

## ANALYSIS

### 1. MOTION TO DISMISS.

The question of standing is jurisdictional. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). The party bringing the action bears the burden of establishing it has standing. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–96 (Fed. Cir. 2005) (citation omitted).

A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention. *See* 35 U.S.C. §§ 154, 271. "Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). Thus, "only parties with exclusionary rights to a patent may bring suit for patent infringement." *Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*, 814 F.3d 1343, 1347 (Fed. Cir. 2016) (citing *Morrow*, 499 F.3d at 1339).

"In the area of patent infringement, . . . if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d

3

1198, 1203 (Fed. Cir. 2005). "[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (citing *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (emphasis in original).

### A. Plaintiffs Had Standing at the Time of Filing of Suits.

Apple first argues that plaintiffs lacked standing at the time the above-captioned actions were filed and the district court therefore had (or has) no subject-matter jurisdiction over the actions. This contention centers on the agreements with Fortress, which Apple argues granted Fortress an unfettered right to sublicense by the time plaintiffs filed suit. This in turn, Apple asserts, undermined plaintiffs' exclusionary rights in the patents-in-suit such that Apple's alleged infringement caused no injury-in-fact. This order disagrees.

The premise of Apple's assertion that Fortress had the unfettered right to sublicense the patents-in-suit (including to Apple) rests on the purported occurrence of two "events of default" that allegedly triggered Fortress's right to practice the license (thereby rendering plaintiffs' exclusionary rights illusory). Specifically, the Revenue Sharing Agreement granted Fortress the following (Dkt. No. 134-7 § 2.8) (emphasis added):

> [A] non-exclusive, royalty free, license (including the right to grant sublicenses) with respect to the Patents, which shall be evidenced by, and reflected in, the Patent License Agreement. . . . [And the parties] agree that [Fortress] shall only use such license *following an Event of Default*.

The Fortress License similarly included the following provision emphasizing the sole condition on which Fortress may use its license to the patents-in-suit (Dkt. No. 134-8 § 2.1) (emphasis added):

> Subject to the terms and conditions herein and in the Purchase Agreement, Licensor hereby grants to Licensee a non-exclusive, *transferrable, sub-licensable*, divisible, irrevocable, fully paid-up, royalty-free, and worldwide license to the Licensed Patents, including, but not limited to, the rights to make, have made, market, use, sell, offer for sale, import, export and distribute the inventions disclosed in the Licensed Patents and otherwise exploit the Licensed Patents in any lawful manner in Licensee's sole and absolute discretion solely for the benefit of the Secured Parties ("Patent License"), provided that Licensee shall only use the Patent License *following an Event of Default*.

4

In turn, the Revenue Sharing Agreement listed a number of scenarios constituting "events of default," including the two following scenarios (Dkt. No. 134-7 §§ 7.1.2, 7.1.3):

> 7.1.2. <u>Other Covenants</u>. The Company shall (x) fail to perform or observe any of the covenants or agreements contained in <u>Article VI</u> . . . [which] failure continues for thirty days after the earlier of (i) written notice to the Company by the Collateral Agent or any Purchaser of such failure or (ii) knowledge of the Company of such failure.
>
> 7.1.3. <u>Representations and Warranties</u>. Any representation or warranty of or with respect to the Company, pursuant to or in connection with any Document . . . so representing to the other parties hereto in connection herewith or therewith, shall be false in any material respect on the date as of which it was made.

Apple first argues that plaintiffs defaulted under Section 7.1.2 by failing to meet the revenue covenant found in Section 6.2.2 of the Revenue Sharing Agreement — which required that "[a]s of March 31, 2017 and the last day of each fiscal quarter thereafter, the Company shall have received at least $20,000,000 in Actual Monetization Revenues during the four fiscal quarter period ending on such date" — because as of March 31, 2017, plaintiffs had only received approximately $14 million in revenue over the relevant period. Apple purports that this event of default continued through at least June 30, 2017, again due to plaintiffs' failure to achieve the requisite $20 million revenue target (*id*. § 6.2.2; Dkt. No. 134-11 at 66:4–67:6, 68:15–18).

Apple next argues that plaintiffs defaulted a second time by making materially false representations under the execution of the third amendment to Revenue Sharing Agreement dated May 15, 2017, which reiterated Section 7.1.3 ("Representations and Warranties") of the original Revenue Sharing Agreement (*see* Dkt. No. 134-9 § 3.02). Specifically, another section of the original Revenue Sharing Agreement (Section 4.5) provided that "[a]ll of the Patents [were] subsisting and have not been adjudged invalid or unenforceable, in whole or in part, and none of the Patents [were] at [that] time the subject to any challenge to their validity or enforceability" and plaintiffs "ha[d] no notice of any lawsuits, . . . re-examination or reissue proceedings commenced or threatened with reference to any of the Patents" (Dkt. No. 134-7 § 4.5). By May 15, 2017 (when the third amendment was executed), however, multiple patents had been invalidated, in whole or in part, or were subjected to invalidity challenges. Because

5

the validity of plaintiffs' patents were key to the value of Fortress's collateral, Apple argues, plaintiffs' "misrepresentation" under Section 4.5 were material, thereby producing a second event of default.

Even assuming that the above-mentioned occurrences did constitute events of default, this order finds that they were annulled under Section 7.3 of the Revenue Sharing Agreement, which provided that (Dkt. No. 134-7 § 7.3) (emphasis added):

> Once an Event of Default has occurred, such Event of Default shall be deemed to exist and be continuing for all purposes of this Agreement until the earlier of (x) Majority Purchasers shall have waived such Event of Default in writing, *(y) the Company shall have cured such Event of Default to the Majority Purchasers' reasonable satisfaction* or the Company or such Event of Default otherwise ceases to exist, or (z) the Collateral Agent and the Purchasers or Majority Purchasers . . . have entered into an amendment to this Agreement which by its express terms cures such Event of Default, at which time such Event of Default shall no longer be deemed to exist or to have continued.

That Fortress chose to execute a third amendment to the Revenue Sharing Agreement with plaintiffs on May 15, 2017 (one day before Uniloc Luxembourg acquired the HP patents) and thus made substantial additional investments — despite knowledge of plaintiffs' alleged discrepancy between the actual and target (as set forth in the agreement) revenue — indicates that plaintiffs cured the purported default for failing to reach the $20 million target revenue by March 31, 2017, to Fortress's reasonable satisfaction. Moreover, James Palmer, Managing Director in the Intellectual Property Finance Group at Fortress Investment Group, has explained in a declaration (in connection with plaintiffs' opposition) that Fortress was in fact satisfied with plaintiffs' monetization efforts at the time of the third amendment (and suggested Fortress's continued satisfaction) (Dkt. No. 141-7 ¶¶ 8–9). The same may be said for the purported default based on false representations regarding the invalidity challenges of plaintiffs' patents, as Palmer further explained that as of May 15, 2017, "Fortress was aware that Uniloc had filed a number of actions on the listed patents, and understood in all, or virtually all, of them invalidity had been, or would shortly be, asserted" (*id*. ¶ 19). Again, the fact that Fortress executed the third amendment to the agreement in spite of this knowledge and indicated its continued satisfaction with plaintiffs' performance on the contract shows that plaintiffs had cured that alleged default to Fortress's reasonable satisfaction.

6

Apple argues that the Palmer declaration is inadmissible as parol evidence, which is barred under New York law (the law governing the agreements at issue) in interpreting an unambiguous contract term. This order, however, does not rely on the Palmer declaration to interpret the contract. Rather, it relies on the Palmer declaration to find that plaintiffs had in fact cured the alleged events of default to Fortress's reasonable satisfaction. Nor does the Palmer declaration "contradict" plaintiffs' prior Rule 30(b)(6) testimony, as Apple asserts. The portion of the Rule 30(b)(6) testimony Apple points to simply states that the witness was not "aware of any instance where the majority purchasers waived an event of default in writing" under Section 7.3(x) (Dkt. Nos. 146-4 at 9; 134-10 at 89:16–19). Palmer's point, however, is that any default, if such had occurred, was *cured* under Section 7.3(y), which does *not* require the cure to be in writing. Instead, it only requires that the cure be made to Fortress's reasonable satisfaction, which the declaration confirms. Apple has not challenged the veracity of the Palmer declaration in this respect. Nor has Apple requested further discovery on this specific issue.

This order recognizes a potential difference between a cure and a waiver in Section 7.3 of the original Revenue Sharing Agreement and that the Revenue Sharing Agreement stated in Section 9.4.2 that "[n]o course of dealing between the Purchasers and the Company shall operate as a waiver of any Purchaser's rights under this Agreement" (Dkt. No. 146-7 § 9.4.2). Under these circumstances, however, Fortress's conduct *and* representations in the Palmer declaration can only be understood as excusing of the purported default(s) — amounting to a cure — by Fortress.

This order therefore finds that no relevant event of default existed at the time plaintiffs filed the suits. As such, Fortress could not have exercised its right to sublicense the patents-in-suit to Apple. Accordingly, plaintiffs had initial standing to sue.[2]

---

[2] There is no clear cut Federal Circuit authority on whether or not the grant of a nonexclusive license with an unfettered right to sublicense destroys a patent owner's standing to enforce the patent. On the one hand, power to sublicense by a third party nonexclusive licensee would seem to eliminate the patentee's authority to exclude anyone from practicing the patent, given that the nonexclusive licensee could always grant a sublicense to an accused infringer. *Cf. WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265–66 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it

7

### B. Uniloc 2017 Has Standing.

It is undisputed that Uniloc Luxembourg transferred all of its interest in the patents-in-suit to Uniloc 2017 after commencement of this suit and therefore no longer has standing. As such, plaintiffs move to add Uniloc 2017 as a party to the above-captioned actions to re-establish subject-matter jurisdiction (as further discussed below). Apple argues, however, that the addition of Uniloc 2017 is still insufficient to restore jurisdiction. That is, the allocation of patent rights in various agreements involving Uniloc 2017, Uniloc USA, and CF Uniloc, according to Apple, ultimately deprived both Uniloc 2017 and Uniloc USA of standing because Uniloc 2017 (1) relinquished its right to sue and recover damages, and (2) lacks substantial rights in the patents-in-suit (Dkt. No. 134-4 at 18–21).

In May 2018, Uniloc 2017 granted Uniloc USA only the bare right to sue — without any exclusionary rights in the patents-in-suit (which Uniloc 2017 retained) (Dkt. No. 134-18 §§ 2.1–2.4). This, Apple contends, is similar to *Morrow* — where the United States Court of Appeals for the Federal Circuit found that the plaintiff had only the bare right to sue and therefore lacked standing — and subsequent district court rulings determining that a patentee that has relinquished its right to sue also lacks standing. 499 F.3d at 1342–43; *see also Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 630 F. Supp. 2d 365, 371 (D. Del. 2007) ("Intersil contracted away its right to sue Power Integrations to Fairchild. That Fairchild lacks standing to take advantage of that right does not mean that Intersil regains it."). Apple further argues that Uniloc 2017 also lacks standing based on the assertion that "it gave up substantial rights to enforce the patents to CF Uniloc," such as the ability to freely assign the patents-in-suit or settle litigation (Dkt. No. 134-4 at 19–20).

Though plaintiffs oppose Apple's assertions, they have nevertheless responded by removing the very issues that Apple contends divest Uniloc 2017 of standing. Specifically, in

---

has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury. . . . [A]n exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it.").

On the other hand, if the standing of a patent owner was eliminated for this reason, then no one would have standing to sue. This problem has not been squarely addressed by the United States Court of Appeals for the Federal Circuit. It, however, need not be resolved in the instant case based on this order's ruling.

1   November 2018, Uniloc 2017 both terminated its agreement with Uniloc USA and removed the
2   allegedly offending provisions in Uniloc 2017's agreement with CF Uniloc (Case No. 18-
3   00358; Dkt. Nos. 105-6 ¶¶ 23–24, 105-7, 105-8). As such, plaintiffs argue, Uniloc 2017 now
4   possesses sufficient interest in the patents-in-suit to retain standing. This order agrees.[3]

5   Accordingly, Apple's motion to dismiss is **DENIED**.

### 2. MOTION TO JOIN NEW PARTY.

Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

"[T]he temporary loss of standing during patent litigation can be cured before judgment." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 (Fed. Cir. 2005) (citing *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371–72 (Fed. Cir. 2004)). In *Insituform Technologies*, a parent company assigned its patent rights to its non-party subsidiary after trial and verdict but before the entry of judgment. The subsidiary then waited two years before filing a motion to be joined as a party (and before entry of judgment) to cure the jurisdictional defect, and the United States Court of Appeals for the Federal Circuit upheld the district court's joinder. 385 F.3d at 1372.

Here, in August 2018, in response to Apple's discovery that Uniloc Luxembourg had transferred all of its interest in the patents-in-suit to Uniloc 2017, plaintiffs moved to add Uniloc 2017 as a plaintiff (Dkt. No. 119). For the reasons stated above with respect to Apple's motion to dismiss, plaintiffs' motion is **GRANTED**.

---

[3] This order notes that plaintiffs produced the new agreements rectifying Uniloc 2017's potential standing defects to Apple "immediately after they were signed," which occurred after plaintiffs filed their opposition to Apple's motion to dismiss, and "expected Apple to submit them to the Court with its Reply" (Case No. 18-358; Dkt. No. 105-6 ¶ 26). Apple, however, did not submit the documents in connection with the instant motion and merely asserted that plaintiffs could not rely on them because plaintiffs did not provide them to the Court (Dkt. No. 147 at 12).
Plaintiffs, however, submitted the new agreements in related (but not one of the above-captioned actions) Case No. C 18-00358 WHA in connection with their motion for indicative ruling (addressed in a companion order). Since Apple references jurisdictional issues raised in connection with the instant motion in opposing plaintiffs' motion for indicative ruling in Case No. C 18-00358 WHA, this order similarly relies upon documents submitted by plaintiffs in that case in resolving the instant motion to dismiss.

9

**CONCLUSION**

For the foregoing reasons, Apple's motion to dismiss is **DENIED** and plaintiffs' motion to join Uniloc 2017 is **GRANTED**.

The Court suspects that Uniloc's manipulations in allocating rights to the patents-in-suit to various Uniloc (possibly) shell entities is perhaps designed to insulate Uniloc Luxembourg from any award of sanctions in the event Uniloc loses this litigation (or some substantial part thereof). Therefore, Uniloc Luxembourg shall remain in the above-captioned actions for the purpose for any sanction award if and when such a sanction award would be warranted and for purposes of facilitating any reasonable discovery against Uniloc Luxembourg.

**IT IS SO ORDERED.**

Dated: January 17, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE