IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> MOTOROLA MOBILITY, LLC, <br><br> Defendant. | ) ) ) ) ) ) C.A. No. 17-1658 (CFC) ) ) **FILED UNDER SEAL** ) ) ) ) |

**MOTOROLA MOBILITY, LLC'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO STAY PENDING RESOLUTION OF
<u>MOTION TO SUBSTITUTE AND MOTION TO DISMISS</u>**

OF COUNSEL:

Martha Jahn Snyder
Carly S. Conway
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

Louis A. Klapp
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-2712

January 29, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 6547
Wilmington, DE 19899-6547
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jtigan@mnat.com

*Attorneys for Defendant
Motorola Mobility, LLC*

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 1

   A. A Stay Is Warranted Because the Pending Motions Will Either Eliminate this Case or Change the Course of Discovery ................................................................................ 1

   B. The *Apple* Order Should Not Impact this Motion to Stay ................................... 3

      1. *Mr. Palmer's unsubstantiated, biased testimony should not be credited* ......................... 5

      2. *Plaintiffs did not "cure" the Events of Default* .................................................. 7

      3. *The Third Amendment to the RSA could not impact future Events of Default* ................. 9

III. CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Bank of New York Mellon Tr. Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629 (S.D.N.Y. 2012) ................................................................................................................. 8

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ....................................................................................................................... 3

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, C.A. No. 14-1192-LPS-CJB, 2015 WL 1737476 (D. Del. Apr. 9, 2015) .......................................................................................................... 4

*Mann v. Brenner*, 375 F. App'x 232 (3rd Cir. 2010) ...................................................................... 3

*Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376 (S.D.N.Y. 2002) .......................... 7

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680 (2d Cir. 1983) ............... 8

*White Knuckle, IP, LLC v. Electronic Arts Inc.*, 2015 WL 5022579 (D. Utah Aug. 24, 2015) ...... 2

I.  **INTRODUCTION**

In their Opposition (D.I. 72) to Motorola's Motion to Stay (D.I. 64–65), Plaintiffs Uniloc USA, Inc. ("Uniloc USA") and Uniloc Luxembourg., S.A. ("Uniloc Lux") (collectively, "Plaintiffs") focused their one-paragraph argument on pointing out that a different court denied a different—albeit similar—motion to dismiss in a set of cases that are already stayed.

Plaintiffs do not—and cannot—dispute that a stay pending resolution of Motorola's Motion to Dismiss (D.I. 56–58; 68–69) and Plaintiffs' Motion to Substitute (D.I. 50) would conserve the parties' resources; that the bulk of fact discovery, expert discovery, and claim construction still lie ahead; or that Plaintiffs would not suffer undue prejudice as a result of a stay. Indeed, Plaintiffs put forth no legally relevant argument that Motorola's Motion to Stay should be denied. In lieu of argument against a stay, Plaintiffs offer a thinly veiled sur-reply to Motorola's Motion to Dismiss by attaching an order from the Northern District of California denying a motion to dismiss in a set of cases Plaintiffs have pending against Apple (the "*Apple* Order").[1] This Court need not consider the *Apple* Order for purposes of deciding the Motion to Stay (or the Motion to Dismiss, for that matter). However, to the extent the Court does consider the *Apple* Order, the Order makes a critical miscalculation by characterizing a failed waiver as a "cure," and by overlooking the unsubstantiated and biased nature of the testimony it relies on. For these additional reasons, the Court should disregard the *Apple* Order.

II.  **ARGUMENT**

    **A.  A Stay Is Warranted Because the Pending Motions Will Either Eliminate this Case or Change the Course of Discovery**

A stay is warranted in this case, whether the Court grants Motorola's Motion to Dismiss or Plaintiffs' Motion to Substitute. Plaintiffs do not dispute that if the Court grants Motorola's

---

[1] *Uniloc USA, Inc. et al. v. Apple Inc.*, No. 3:18-cv-00360-WHA (N.D. Cal.) (D.I. 72, Ex. A (hereafter, "Order")).

Motion, a stay would conserve party and judicial resources, and prevent jurisdictional issues arising from claim construction and the resolution of discovery disputes.  And Plaintiffs do not dispute that if the Court grants Plaintiffs' Motion, a stay would prevent Motorola from taking discovery from, and providing discovery to, the wrong entities.

In opposition, Plaintiffs do little more than drop a footnote citing a solitary case from the District of Utah, *White Knuckle, IP, LLC v. Electronic Arts Inc.*, 2015 WL 5022579 (D. Utah Aug. 24, 2015), for the unremarkable proposition that not all dispositive motions justify a stay. (D.I. 72 at 1, n.1).  The case is entirely inapt to the present circumstances.  In *White Knuckle*, the defendant filed an answer, waited for the plaintiff to go through the burden of serving initial infringement contentions, and then filed a motion under Rule 12(c) for failure to state a claim, along with a motion to stay, because the asserted claims of the patent-in-suit were allegedly directed to an abstract idea.  *Id*. at *1.  In contrast, Motorola filed its motion to dismiss for lack of subject matter jurisdiction promptly upon receiving the relevant documents from Plaintiffs. (*See* D.I. 57 at 8–9).  Motorola also requested a stay of proceedings promptly thereafter so that, if granted, neither party would need to continue with claim construction briefing or discovery while the Motions were pending, thus enabling both parties to benefit from any stay the Court would issue.  (*See* D.I. 64–65).  Moreover, the defendant in *White Knuckle* did not present a challenge to subject matter jurisdiction, which, if successful, would create jurisdictional issues should the Court have proceeded with claim construction and other decisions over which it did not have subject matter jurisdiction.

Unlike *White Knuckle*, a stay of discovery is appropriate in this case while the motions are pending because "if [either] motion is granted, discovery would be futile."  *See Mann v. Brenner*, 375 F. App'x 232, 239 (3rd Cir. 2010).  As noted in Motorola's opening brief, a stay

would prevent the jurisdictional issues that would arise should the case proceed with claim construction and the resolution of discovery disputes, if the Court finds that it lacks subject matter jurisdiction in this case. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012) ("It is well-established that a plaintiff's Article III standing is a prerequisite for the federal courts to decide the merits of a suit."). Indeed, granting Motorola's Motion would eliminate the need for any fact or expert discovery at all, let alone claim construction, summary judgment, or trial.

Even if Motorola's Motion is denied, and Plaintiffs' Motion is granted, the substitution of a new plaintiff, Uniloc 2017, just two months before the deadline for substantial completion of document production and four months before fact discovery cutoff, would change the course of discovery. (*See* D.I. 46). Plaintiffs allege that they are not the current owners of the patent-in-suit, and in fact have not been since May of 2018. (*See* D.I. 50 at 1). A stay would prevent Motorola from further seeking discovery from, and producing discovery to, the wrong entities in the limited time left in discovery.

### B. The *Apple* Order Should Not Impact this Motion to Stay

Plaintiffs do not dispute that Motorola's Motion to Dismiss seeks dismissal of Plaintiffs' Amended Complaint in its entirety for lack of subject matter jurisdiction. Plaintiffs only argue that a stay is not warranted because a motion to dismiss on similar facts in a set of (already stayed) cases before a different court was denied. (D.I. 72 at 1).[2] To the extent that Plaintiffs improperly attempt to argue the merits of the Motion to Dismiss as part of the stay analysis, the

---

[2] The *Apple* Order also joined, rather than substituted, Uniloc 2017 as Plaintiff. (Order at 9). Judge Alsup made clear that Plaintiffs "are going to stay in the case for purposes of sanctions or whatever else. At the end of the case if this case has no merit or it meets the standard for sanctions, every possible Plaintiff is going to get hit. Maybe even the lawyers." (Conway Decl., Ex. 2, Hearing Tr. at 8:7–10).

3

case law is clear that a court's "task" in deciding a motion to stay is *not* "to predict the likely outcome of the motions to dismiss." *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, C.A. No. 14-1192-LPS-CJB, 2015 WL 1737476, at *2, n.4 (D. Del. Apr. 9, 2015). But even if the Court were inclined to consider the merits of the Motion to Dismiss in this analysis, the *Apple* Order should not impact this Motion to Stay.

    Like the Motion to Dismiss currently pending before this Court, Apple's motion to dismiss asserted that Plaintiffs lacked standing at the time the complaints in their cases were filed, because they lacked the right to exclude Apple—or any other defendant—from practicing the asserted patents. (*See* Order at 3). Before filing suit, Plaintiffs, by virtue of defaulting on a creditor agreement, gave Fortress Credit Co. LLC ("Fortress") the right to transfer or sublicense any of Plaintiffs' patents. (*See id.*). Since Plaintiffs lacked the right to exclude Apple from using the patents, they could not claim injury-in-fact, and thus did not have standing. (*Id.*).

    As an initial matter, the *Apple* Order largely agrees with Motorola's analysis of the Fortress Revenue Sharing Agreement ("RSA") in the Motion to Dismiss. (*See* D.I. 57 at 2–6; 12–16). The *Apple* Order does not directly take up whether Plaintiffs' failures to meet the RSA's revenue requirements and Plaintiffs' misrepresentations regarding validity challenges to their patents were indeed Events of Default under the RSA. (*See* Order at 5–6; D.I. 57 at 4–6, 10–12). And the *Apple* Order does not dispute that James Palmer's declaration in support of Plaintiffs' Opposition to Motorola's Motion to Dismiss[3] is inadmissible parol evidence, where Mr. Palmer's statements contradict the unambiguous language of the RSA as to what constitutes an "Event of Default." (*See* Order at 7) ("This order, however, does not rely on the Palmer declaration to interpret the contract. Rather, it relies on the Palmer declaration to find that plaintiffs had in fact

---

[3] Plaintiffs filed identical Palmer Declarations in the *Apple* case and in this case in support of their Oppositions to Apple's and to Motorola's Motions to Dismiss.

4

cured the alleged events of default to Fortress's reasonable satisfaction.").

The *Apple* Order only parts ways with Motorola regarding whether Mr. Palmer's declaration is sufficient to demonstrate that Plaintiffs' Events of Default were "cured" by Fortress signing the Third Amendment to the RSA on May 15, 2017. (*See id.*). According to the *Apple* Order, because any relevant Event of Default had been "cured" by the time Plaintiffs filed suit against Apple, Fortress could not have exercised its right to sublicense the asserted patents, and Plaintiffs would have had standing to sue. (*See id.*). But Apple did not raise, and the Order did not address the unsubstantiated, self-serving nature of Mr. Palmer's testimony.[4] Moreover, the *Apple* Order makes a critical miscalculation and should not impact the Court's decision on Motorola's Motion to Stay.

### 1. *Mr. Palmer's unsubstantiated, biased testimony should not be credited*

The *Apple* Order overlooks the unsubstantiated, self-serving nature of Mr. Palmer's testimony. Unlike in Motorola's briefing, Apple did not raise this fatal flaw in Mr. Palmer's testimony.

In opposition to Motorola's Motion to Dismiss and Motion to Stay, Plaintiffs seek to rely on Mr. Palmer's declaration as their sole evidence that, in contradiction to the unambiguous language of the RSA, Plaintiffs did not default on their obligations, or if they had, those defaults "would have been annulled" because "Fortress did not view or treat Uniloc as having defaulted." (Pls.' Opp. Mot. to Dismiss, D.I. 67 at 4). But neither Plaintiffs nor Mr. Palmer provide any evidence that Mr. Palmer's testimony reflects the contemporaneous interests and motivations of Fortress at the time of the RSA or the Third Amendment, or that his declaration is anything more

---

[4] Uniloc 2017 is controlled by Fortress. (*See* Conway Decl., Ex. 1, Levy Dep. 95:12–96:17, 97:14–98:5); *see also Uniloc 2017 LLC v. Motorola Mobility, LLC*, 1:18-cv-01844-RGA (D. Del.) (D.I. 7).

5

than a post-hoc justification to serve Fortress's current interests. Even to the extent Fortress's intent is relevant at all in light of the clear language of the RSA, Mr. Palmer's testimony should be given no weight as evidence that Plaintiffs' Events of Default were "cured."

Mr. Palmer states that he currently is a Fortress Managing Director, but does not identify when he took on this role or when he joined Fortress. (D.I. 67, Palmer Decl., ¶ 1). Nor does he describe the responsibilities involved in his current role or why he would have insight into Fortress's dealings with Plaintiffs. Mr. Palmer, notably, does not claim to have personal knowledge of any of the allegations in his declaration, nor does he include any documentary support for his statements. (*See generally* Palmer Decl.). Yet, none of this stops Mr. Palmer from testifying about what Fortress "regard[ed]" and "consider[ed]" (*id.* at ¶ 11), "well understood" and "was aware [of]" (*id.* at ¶ 20), "rel[ied] upon" (*id.* at ¶ 21), "was satisfied with" (*id.* at ¶¶ 9 & 12) and viewed as "no longer of significance to Fortress," how Fortress "interpret[ed]" its contracts (*id.* at ¶ 21), or "[t]he purpose of the loan [to Plaintiffs]" (*id.* at ¶ 6), years ago when he may (or may not) have worked at Fortress.

Not only is Mr. Palmer's testimony unsubstantiated, but it is also self-serving and partial. Mr. Palmer is employed by a party prone to bias because Fortress stands to benefit should Plaintiffs prevail and Uniloc 2017 ultimately obtains relief from Motorola. The interests of Fortress and Uniloc are deeply intertwined: among other things, Fortress loaned Plaintiffs money to pay for their litigation campaigns; Fortress directors structured the asset purchase agreement between Uniloc Lux and Uniloc 2017, which included the patent-in-suit; a Fortress Managing Director, Erez Levy, served as the corporate representative for Uniloc 2017 in a Rule 30(b)(6) deposition in the *Apple* case; and, most significantly, a Fortress affiliate, CF Uniloc Holdings, has a security interest in Uniloc 2017 and its patent portfolio, including the patent-in-suit. (*See*

6

Conway Decl., Ex. 1, 95:12–96:17; D.I. 58, Ex. A, Recitals; Ex. D, Levy Dep., 62:22–63:4; Ex. E, Turner Dep., 121:20–122:14; *see also Uniloc 2017 LLC v. Motorola Mobility, LLC*, 1:18-cv-01844-RGA (D. Del.) (D.I. 7, Corporate Disclosure Statement (identifying CF Uniloc Holdings as the parent company of Uniloc 2017)).

As described by Mr. Levy, the relationship between Fortress and Uniloc has only intensified since the Events of Default about which Mr. Palmer provided testimony, once Uniloc Lux assigned its patent portfolio, including the patent-in-suit, to Uniloc 2017:

> **Q:** What is your own understanding as to the business deal behind the legal agreements that we're talking about today where Uniloc Luxembourg's assets were transferred to Uniloc 2017?
>
> **A:** That ***we [Fortress] financed a company [Uniloc 2017] and, in essence, took a bigger economic stake in the outcome of Uniloc as a whole*** … If you look at the previous transactions, they, in essence, were capped at a certain return … And this new arrangement basically, kind of—not kind of, but uncapped our return on the investment.  So we took definitely a bigger stake and a bigger risk from a financial perspective, but also hopefully our return in the future would be bigger.

(Conway Decl., Ex. 1, 97:14–98:5) (emphasis added).  IShould this case go forward and Uniloc 2017 manages to obtain monetary relief from Motorola, Fortress stands to benefit.

Mr. Palmer's statements are nothing more than post-hoc explanations to serve his employer's current interests.  His testimony cannot outweigh the clear language of the Fortress RSA, and should be given no weight as evidence that Plaintiffs' Events of Default were "cured."  *See Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002) (interpreting New York law,[5] "self-serving statements" that contradict the language of the agreement "fail as a matter of law").

## 2. *Plaintiffs did not "cure" the Events of Default*

The *Apple* Order depends on a flawed premise: that Fortress signing the Third

---

[5] *See* D.I. 68 at 6, n.3 (Fortress RSA is governed by New York law).

7

Amendment to the RSA is somehow proof that Plaintiffs *cured* the Events of Default to Fortress's satisfaction. (*See* Order at 7) ("Fortress's conduct and representations in the Palmer declaration can only be understood as excusing of the purported default(s)—amounting to a cure—by Fortress."). Yet excusing a default is a relinquishment of a known right—a waiver, not a cure—and Fortress could not waive Events of Default through a course of conduct.

To "cure" is "to remove legal defects or correct legal errors." *See Bank of New York Mellon Tr. Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 648–49 (S.D.N.Y. 2012) (defining "cure" under New York law). For example, Plaintiffs could attempt to "cure" the Event of Default in which they failed to meet the RSA's revenue requirements for a particular quarter by making up for it in the next quarter. However, not only is there no evidence that Plaintiffs did so, but even such a "cure" would still require Fortress to *waive* Plaintiffs' failure to meet the original deadline. Moreover, there is evidence that, instead of making up for the missed revenue thresholds, Plaintiffs *again* failed to meet their revenue target in the quarter ending on June 30, 2017. (*See* D.I. 58, Ex. G, Disclosure Schedules).

The *Apple* Order looks to Mr. Palmer's declaration regarding Fortress's decision "to execute a third amendment to the RSA with plaintiffs … despite knowledge of plaintiffs' alleged discrepancy between the actual and target … revenue" as evidence of a "cure" of Plaintiffs' Event of Default. (Order at 6; Palmer Decl. ¶¶ 10, 12, 14). At most, this is purported evidence that Fortress attempted to *waive* Plaintiffs' Event of Default, rather than evidence that Plaintiffs *cured* the Event of Default. *See Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 684–85 (2d Cir. 1983) (defining "waiver" under New York law as "the intentional relinquishment of a known right"). Specifically, Mr. Palmer explains that Fortress made "a substantial additional investment, finalized by the Third Amendment to the [RSA]" not because

8

Plaintiffs had cured their Event of Default, but because "the earlier minimums [for revenue targets]" were "no longer of significance to Fortress." (Palmer Decl., ¶ 10).

This distinction between whether Fortress attempted to waive Plaintiffs' Default or Plaintiffs cured their Default is a critical one that is not adequately explored in the *Apple* Order. As set forth in the RSA, Events of Default can only be waived ***in writing***, and "[n]o course of dealing between the Purchaser and the Company shall operate as a waiver of any of Purchaser's rights under this Agreement"—including the signing of the Third Amendment to the RSA. (D.I. 58, Ex. A, ¶ 7.3; D.I. 69, Ex. U, ¶ 9.4.2). Thus, not only did Plaintiffs not "cure" their Event(s) of Default, but Fortress did not effectively waive Plaintiffs' Events of Default under the RSA.

### 3. *The Third Amendment to the RSA could not impact future Events of Default*

Even if the *Apple* court were correct that Fortress signing the Third Amendment "cured" Plaintiffs' previous Events of Default, Plaintiffs caused subsequent Events of Default after the Third Amendment, for which Mr. Palmer provides no claim of cure.

The RSA was amended three times, with the final amendment occurring on May 15, 2017. (D.I. 58, Ex. C). The RSA required that, "[a]s of March 31, 2017 and the last day of each fiscal quarter thereafter, [Uniloc Lux and Uniloc USA] … have received at least $20,000,000 in [licensing and litigation revenue] during the fourth fiscal quarter ending on such date." (D.I. 58, Ex. A, § 6.2.2 & App'x I A-1). The RSA after the Third Amendment included this same requirement. (*See* D.I. 58, Ex. C, § 6.2.2). ***After*** the Third Amendment was signed on May 15, 2017, Plaintiffs reported only $14.4 million in licensing and litigation revenue for fiscal quarter ending June 30, 2017, again defaulting on their revenue requirement. (D.I. 58, Ex. G, Disclosure Schedules at -002656, -002666; Ex. E, 70:11– 71:13; 72:22–25). Accordingly, Fortress signing the Third Amendment to the RSA could not have cured this Event of Default.

Moreover, Mr. Palmer's declaration claims that as of the date the Third Amendment was

9

signed, "Fortress was aware that Uniloc had filed a number of actions on the listed patents in the two years since December 30, 2014, and understood in all, or virtually all, of them invalidity had been (or would shortly be) asserted." (Palmer Decl., ¶ 20). Even taking this unsubstantiated statement as true, Mr. Palmer does not claim that Fortress was aware that some of those assertions of invalidity had already been successful. Indeed, on March 10, 2016, before Fortress signed the Third Amendment to the RSA, the patent which had accounted for ▓▓ of Plaintiffs' licensing revenue as of December 30, 2014 (*see* D.I. 68 at 8), was invalidated by an *inter partes* review challenge that had already been filed when the RSA was first executed. *See Sega of America, Inc. et al. v. Uniloc USA, Inc. et al.,* IPR2014-01453, FWD, Paper 27 (March 10, 2016). By May 15, 2017, when the Third Amendment to the RSA was signed, at least seven Uniloc patents had already "been adjudged invalid or unenforceable, in whole or in part." (*See generally* D.I. 58, App'x B; Ex. A, § 4.5). Yet in the RSA as modified by the Third Amendment, Plaintiffs reaffirmed their representations that "[a]ll of the [Uniloc] Patents … have not been adjudged invalid or unenforceable, in whole or in part, and none of the Patents [is] at this time … subject to any challenge to their validity or enforceability." (D.I. 58, Ex. C, ¶ 4.5). Fortress's signing of the Third Amendment could not have "cured" Plaintiffs' Event of Default in misrepresenting the status of Plaintiffs' patents, if Fortress was unaware that Plaintiffs' patents had been invalidated. And even Mr. Palmer admits that Plaintiffs' misrepresentations had not been "discovered until recently," after the RSA had been terminated. (Palmer Decl., ¶ 18).

### III.  CONCLUSION

Because the *Apple* Order is inapposite here and Plaintiffs did not otherwise meaningfully oppose a stay, Motorola respectfully requests the Court enter the requested stay.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Martha Jahn Snyder<br>Anthony A. Tomaselli<br>Kristin Graham Noel<br>Carly S. Conway<br>QUARLES & BRADY LLP<br>33 East Main Street, Suite 900<br>Madison, WI 53703<br>(608) 251-5000<br><br>Louis A. Klapp<br>QUARLES & BRADY LLP<br>300 North LaSalle Street, Suite 4000<br>Chicago, IL 60654<br>(312) 715-5000<br><br>January 29, 2019 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br>Jack B. Blumenfeld (#1014)<br>Karen Jacobs (#2881)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>kjacobs@mnat.com<br>jtigan@mnat.com<br><br>*Attorneys for Defendant*<br>*Motorola Mobility, LLC* |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 29, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Sean T. O'Kelly, Esquire<br>O'KELLY ERNST & JOYCE, LLC<br>901 North Market Street, Suite 1000<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Hayes, Esquire<br>Kevin Gannon, Esquire<br>James J. Foster, Esquire<br>Aaron Jacobs, Esquire<br>PRINCE LOBEL TYE LLP<br>One International Place, Suite 3700<br>Boston, MA  02110<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

                                                 */s/ Jeremy A. Tigan*
                                                 Jeremy A. Tigan (#5239)