# United States Court of Appeals
# for the Federal Circuit

————————————

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A.,**
*Plaintiffs-Appellants*

**v.**

**MOTOROLA MOBILITY LLC,**
*Defendant-Appellee*

————————————

2021-1555

————————————

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01658-CFC, Chief Judge Colm F. Connolly.

--------------------------------------------------

**UNILOC 2017 LLC,**
*Plaintiff-Appellant*

**v.**

**BLACKBOARD INC.,**
*Defendant-Appellee*

————————————

2021-1795

————————————

Appeal from the United States District Court for the District of Delaware in No. 1:20-cv-00665-CFC, Chief Judge Colm F. Connolly.

————————————

Decided: November 4, 2022

————————————

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, argued for plaintiffs-appellants in 21-1555. Also argued by LUCAS M. WALKER for plaintiff-appellant in 21-1795. Also represented by KENNETH E. NOTTER, III; JORDAN RICE, Chicago, IL. Also represented in 21-1555 by AARON JACOBS, Prince Lobel Tye LLP, Boston, MA; SEAN T. O'KELLY, O'Kelly & O'Rourke, LLC, Wilmington, DE. Also represented in 21-1795 by JAMES J. FOSTER, Prince Lobel Tye LLP, Boston, MA.

LOUIS A. KLAPP, Riley Safer Holmes & Cancila LLP, Chicago, IL, argued for defendant-appellee Motorola Mobility LLC. Also represented by STEPHEN MAXWELL HANKINS, San Francisco, CA.

PAUL WHITFIELD HUGHES, McDermott, Will & Emery LLP, Washington, DC, argued for defendant-appellee Blackboard Inc. Also represented by MICHAEL S. NADEL; CHARLES M. MCMAHON, Chicago, IL.

COURTLAND L. REICHMAN, Reichman Jorgensen Lehman & Feldberg LLP, Redwood Shores, CA, for amicus curiae Cirba Inc. in 21-1555. Also represented by ARIEL C. GREEN ANABA; CHRISTINE E. LEHMAN, AISHA MAHMOOD HALEY, Washington, DC.

————————————

Before LOURIE, DYK, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Additional views filed by *Circuit Judge* LOURIE.

DYK, *Circuit Judge*.

Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (together, "the Unilocs") sued Motorola in the District of Delaware for infringement of U.S. Patent No. 6,161,134 (the "*Motorola* case"). The asserted patent concerns, in part, pairing a telephone with another device and using the other device to make a telephone call using the telephone's cellular capabilities.

Motorola moved to dismiss, alleging the Unilocs lacked standing because they lacked the right to exclude, having granted Fortress Credit Co. LLC ("Fortress") a license and an unfettered right to sublicense the asserted patent. The Unilocs argued that they had not granted such a license to Fortress and, even if they had, the license would not eliminate the Unilocs' standing. The district court dismissed, agreeing that the Unilocs had granted a license and that the existence of a license deprived the Unilocs of standing.

In a related case, the Unilocs sued Blackboard Inc. in the Western District of Texas for infringement of U.S. Patents Nos. 6,324,578 and 7,069,293 which both concern technology that facilitates access to customized and licensed applications on individual computers within distributed networks (the "*Blackboard* case"). Uniloc 2017 (which acquired the relevant patents from Uniloc Luxembourg ("Uniloc Lux")) was later substituted as the sole plaintiff**,** and the case was transferred to the District of Delaware. The district court then dismissed the Blackboard case for lack of subject matter jurisdiction, apparently applying the *Motorola* case as a matter of collateral estoppel.

On appeal, in addition to defending the district courts' decisions, both Motorola and Blackboard assert that the decision in another Uniloc case, *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) (the "*Apple* case"), (which has now become final by the dismissal of Uniloc USA's appeal), establishes that the Unilocs and Uniloc 2017 lack standing as a matter of collateral estoppel in the *Motorola* and *Blackboard* cases. We agree and find the *Apple* decision is collateral estoppel in those cases. We thus affirm the district courts' determinations that the Unilocs and Uniloc 2017 lack standing.

In a companion case, also issued today, we concluded that a Termination Agreement entered into between the Unilocs and Fortress on May 3, 2018 eliminated the Fortress license and that Uniloc 2017 has standing going forward once the Agreement was executed. *Uniloc 2017 LLC v. Google LLC*, -- F.4th -- (Fed. Cir. 2022) (the "*Google* case").

## Background

The factual backgrounds of the Motorola and Blackboard cases are identical in all respects relevant to this appeal. On December 30, 2014, Uniloc 2017's predecessors, the Unilocs, entered into a Revenue Sharing and Note and Warrant Purchase Agreement ("RSA") with Fortress in connection with a loan Fortress made to the Unilocs. The RSA stated:

> [T]he [Unilocs] shall grant to [Fortress] . . . a non-exclusive, royalty free, license (including the right to grant sublicenses) with respect to the Patents, which shall be evidenced by, and reflected in, the Patent License Agreement. [Fortress] . . . shall only use such license following an Event of Default.

Motorola J.A. 152, § 2.8. In other words, Fortress effectively would obtain a license if there was an Event of

Default.  The Patent License Agreement, which formally granted the license referenced in the RSA, stated that the license was "non-exclusive, transferrable, sub-licensable, divisible, irrevocable, fully paid-up, royalty-free and worldwide."[1]  Motorola J.A. 174, § 2.1.  The patents involved in these cases were all included in the RSA and License Agreement.

There were three enumerated Events of Default, one of which was the failure "to perform or observe any of the covenants or agreements contained in Article VI."  Motorola J.A. 162, § 7.1.2.  One such covenant was:  "As of March 31, 2017 and the last day of each fiscal quarter thereafter, the [Unilocs] shall have received at least $20,000,000 in Actual Monetization Revenues during the four fiscal quarter period ending on such date."  Motorola J.A. 156, § 6.2.2.

There was no dispute the Unilocs failed to reach the $20,000,000 monetization target for the four quarters ending in March 2017.  Under the terms of the RSA, this appeared to constitute an Event of Default resulting in an effective license grant to Fortress.

I.    The *Motorola* Case

Against this background, on November 15, 2017, the Unilocs filed the *Motorola* case, a patent infringement suit in the District of Delaware against Motorola, alleging infringement of U.S. Patent No. 6,161,134, which was included in the License Agreement.  In response, Motorola moved to dismiss for lack of standing.  Following briefing

---

[1]     Unlike the situation in *Uniloc 2017 LLC v. Google*, -- F.4th -- (Fed. Cir. 2022), both the RSA and the Patent License Agreement were in effect at the time the Unilocs sued Motorola and Blackboard because both of these suits were filed before May 3, 2018, the date the Termination Agreement was signed.

and oral argument on the motion, on December 6, 2020, Motorola filed a Notice of Subsequent Authority alerting the district court to the recently decided Apple case where the district court had found lack of standing on virtually identical facts. There, the court found that Uniloc USA lacked standing because the asserted patent had been licensed to Fortress, and Fortress had the right to sublicense the asserted patent to the alleged infringer. *Apple* 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020). Motorola characterized the Apple decision as "not binding." Motorola J.A. 1076. On December 30, 2020, the district court granted Motorola's motion and dismissed the Motorola case for lack of subject matter jurisdiction without reference to the *Apple* case.

The district court concluded that the Unilocs committed at least one Event of Default sufficient to trigger Fortress's acquisition of the license and that this Event of Default was neither cured nor annulled. Relying on cases involving exclusive licensees, as opposed to patent owners, the district court held that the Unilocs lacked standing to sue for infringement because Fortress had the theoretical right to sublicense the asserted patent to the alleged infringer, and the Unilocs, as a result, lacked the exclusionary right necessary to confer standing.

On May 3, 2018, Uniloc 2017 acquired all relevant patents from Uniloc Lux. On December 11, 2018, the Unilocs filed a motion to substitute Uniloc 2017 as a party. After deciding that Uniloc USA and Uniloc Lux lacked standing, the district court dismissed the motion to substitute as moot.

## II. The *Blackboard* Case

At about the same time as the filing of the *Motorola* case, on August 11, 2017, the Unilocs filed the *Blackboard* case, a patent infringement suit in the Western District of Texas against Blackboard, alleging infringement of U.S.

Patent Nos. 6,324,578 and 7,069,293, both of which were included in the License Agreement.  On January 10, 2020, Uniloc 2017 having acquired all relevant patents, the court granted the Unilocs' motion to substitute Uniloc 2017 as plaintiff.  The Western District of Texas transferred the case to the District of Delaware on May 15, 2020.  After the decision in the *Motorola* case, *see Uniloc USA, Inc. v. Motorola Mobility, LLC*, 17-1658, 2020 WL 7771219 (D. Del. Dec. 30, 2020), the district court dismissed the *Blackboard* case for lack of standing, apparently on grounds of collateral estoppel based on the *Motorola* decision.

The Unilocs appealed the decision in the *Motorola* case, and Uniloc 2017 appealed the decision in the *Blackboard* case.  We have jurisdiction under 28 U.S.C. § 1295(a)(1). We review a dismissal for lack of subject matter jurisdiction de novo.  *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016).

DISCUSSION

Uniloc[2] argues that the Delaware District Court erred in dismissing these two actions for lack of standing.  Uniloc maintains that even if it granted a license and right to sub-license to Fortress, the district courts' rulings are not consistent with our decisions in *Aspex Eyewear, Inc. v Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006) and *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010).  There we held that the patentee's grant of a license that includes the right to sublicense did not deprive the patent owner of Article III standing.  *Aspex Eyewear*, 434 F.3d at 1339–44; *Alfred E. Mann Found. for Sci. Rsch.*, 604 F.3d at 1358–63.  Uniloc distinguishes cases

---

[2]    For simplicity, we hereinafter refer collectively to the Unilocs (that is, Uniloc USA and Uniloc Lux) and Uniloc 2017 as Uniloc.

relied on by the district court as involving the standing of licensees (rather than patentees) who lacked an exclusive license.

We recognize there is considerable force to Uniloc's argument that, even if Fortress had been granted a license and an unfettered right to sublicense, Uniloc would have Article III standing.  Patent owners and licensees do not have identical patent rights, and patent owners arguably do not lack standing simply because they granted a license that gave another party the right to sublicense the patent to an alleged infringer.  But, we need not resolve the question of whether a patent owner who granted a right to sublicense lacks standing here.  We hold that, in light of *Apple* 2020 WL 7122617, Uniloc is collaterally estopped from asserting that it has standing in these cases.

The patent at issue in the *Apple* case was included in the License Agreement between the Unilocs and Fortress. *Apple*, 2020 WL 7122617, at *1.  The district court reached three conclusions in the *Apple* case: (1) the Unilocs committed an Event of Default and failed to cure or annul said Event, granting Fortress a license, including a right to sublicense, to the asserted patent, *id.* at *4–6; (2) a patent plaintiff must have exclusionary rights in the patent to have standing to sue for infringement, *id.* at *2–4; and (3) Uniloc USA lacked exclusionary rights in the asserted patent because Fortress had the ability to license the asserted patent to the alleged infringer (Apple), which deprived Uniloc USA of standing.  *Id.* *7–8.

On January 25, 2021, Uniloc USA's appeal of the *Apple* decision was docketed, and on May 25, 2021, Uniloc filed its opening appeal brief in the *Apple* case requesting reversal on the issue of standing.  On June 22, 2021, Uniloc and Apple moved jointly to voluntarily dismiss the *Apple* appeal pursuant to settlement but did not request that we vacate the lower court decision or remand the case to the

district court to vacate the decision.  We dismissed the *Apple* appeal on June 29, 2021.  The district court decision was not vacated.

Whether the law of the regional circuit—in this case the Third Circuit—governs principles of issue preclusion or whether we apply our own law, the same principles of collateral estoppel apply.  So, we need not decide which law governs.[3]

---

[3]   This court has developed its own law with respect to res judicata (including collateral estoppel) in non-patent cases.  *See, e.g.*, *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365–66 (Fed. Cir. 2000).  But in patent cases, despite our exclusive jurisdiction, we have generally stated that we look to regional circuit law for general principles of res judicata and to our own law for principles that are related to patent law.  *See Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).  This distinction leads to the potential anomaly of a single judgment of this court having different consequences in later cases depending on the regional circuit in which the later case arose.  This anomaly is illustrated by the facts of this case in which the effect of the *Apple* judgment was litigated in cases from both the Northern District of California (the *Google* case) and the District of Delaware (the *Motorola* and *Blackboard* cases).  Moreover, our cases have hardly been consistent in determining which aspects of res judicata are governed by regional circuit law, and which are governed by Federal Circuit law.  *Compare Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 475–77 (Fed. Cir. 1991) (applying Federal Circuit law to determine whether a decision was sufficiently final for issue preclusion to apply), *with Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1337–38 (Fed. Cir. 2017) (applying regional circuit law to determine whether a decision was sufficiently final);

There are four requirements for collateral estoppel to apply:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action;
>
> (2) the issue must have been actually litigated;
>
> (3) the issue must have been determined by a valid and final judgment; and
>
> (4) the determination must have been essential to the prior judgment.[4]

*In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) (formatting changed); *see also Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (similar).

In general, collateral estoppel is applied against the losing party in the original action even in situations where

---

*Compare also Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379–80 (Fed. Cir. 1999) (applying Federal Circuit law to determine whether a party had a full and fair opportunity to litigate such that issue preclusion should apply), *with Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323–25 (Fed. Cir. 2003) (applying regional circuit law to determine whether a party had a full and fair opportunity to litigate). Here, as in other cases, *see, e.g., Foster*, 947 F.2d at 477 n.7, we need not resolve which circuit's law should govern because our law and Third Circuit law are in relevant respects the same.

[4]     The party against whom preclusion is asserted must also have been a party or been in privity with a party to the prior adjudication. *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016); *Lee by Lee v. United States*, 124 F.3d 1291, 1296 (Fed. Cir. 1997), *amended by* 129 F.3d 1482 (Fed. Cir. 1997). There is no issue of lack of privity here.

the party asserting collateral estoppel was not a party to the original action.  In other words, non-mutual collateral estoppel is available.  *Blonder-Tounge Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1470–71 (Fed. Cir. 1989); *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007).  "For defensive collateral estoppel . . . to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action."  *Peloro*, 488 F.3d at 174–75 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328, 332 (1979)); *Blonder-Tongue Labs.*, 402 U.S. at 331, 333); *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001); *Restatement (Second) of Judgments* § 29 (Am. L. Inst. 1982).

There is no question here that the *Apple* case addressed and decided the very same issues as are presented here; those issues were actually litigated; the issues were determined by a valid and final judgment; and the determination of all three issues was essential to the prior judgment. On its face, collateral estoppel would appear to apply.  To be sure, there is some discretion to deny the application of non-mutual collateral estoppel, *see Restatement (Second) of Judgments* § 29; *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 528 (3d Cir. 2002), but this discretion is confined to defined situations where application of collateral estoppel is not appropriate under various rules established by case law, such as when one party lacks a full and fair opportunity to litigate.  The discretion is not unbounded discretion to apply collateral estoppel whenever the court thinks that outcome might be desirable.

Uniloc argues collateral estoppel should not apply for several reasons, none of which we find persuasive.  First, Uniloc argues that Motorola and Blackboard forfeited their collateral estoppel argument by failing to raise the argument in the district court.  The *Apple* case was decided by the district court on December 4, 2020.  Although the

primary briefing and oral argument in the *Motorola* case were completed by October 1, 2020, a decision was not rendered until December 30, 2020. A decision was not rendered in the *Blackboard* case until January 28, 2021. Thus, both decisions were rendered by the district court after the decision in the Apple case. The parties debate whether Motorola and Blackboard had the opportunity to raise the collateral estoppel issue before the district court, but even assuming the issue could have been raised, there was no forfeiture.

To be sure, collateral estoppel can be applied based on a district court decision that is still pending on appeal,[5] and we have affirmed the application of issue preclusion even when the preclusive judgment was pending appeal. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1380–81 (Fed. Cir. 1999). Further, the general rule is that issue preclusion must be "raised at the first reasonable opportunity after the rendering of the decision having the

---

[5]   *See SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) ("[T]he law is well settled that the pendency of an appeal has no affect on the finality or binding effect of a trial court's holding." (citing *Deposit Bank v. Frankfort*, 191 U.S. 499 (1903))); *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) ("[T]he pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment."); 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4433, at 66 (3d ed. 2017) ("[I]t is . . . held in federal courts that the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."); *Restatement (Second) of Judgments* § 13, cmt. f ("[A] judgment otherwise final remains so despite the taking of an appeal . . . .").

preclusive effect." *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1579–80 n.8 (Fed. Cir. 1994); *see also Arizona v. California*, 530 U.S. 392, 410 (2000) ("[R]es judicata [is] an affirmative defense ordinarily lost if not timely raised."). So while it is true that, in general, issue preclusion cannot be raised for the first time on appeal, *see SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170–71 (Fed. Cir. 2018), we have not had occasion to address whether issue preclusion must be raised before the preclusive judgment ceases to be subject to further appeal. The Third Circuit in *5 Unlabeled Boxes* (a decision with which we agree) concluded that the failure to raise collateral estoppel before the appeal process in the preclusive case has concluded should not necessarily be a work of forfeiture. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169 (3rd Cir. 2009).

*5 Unlabeled Boxes* involved two parallel proceedings involving the same facts between the same parties (the United States and Hi-Tech Pharmaceuticals, Inc.), one in the Northern District of Georgia and one in the Western District of Pennsylvania. *Id.* at 173. The Georgia district court was the first to reach a decision and ruled in favor of the United States on August 15, 2007. *Id.* On September 13, 2007, Hi-Tech filed a notice of appeal to the Eleventh Circuit. *Id.* The United States did not notify the Pennsylvania district court of the Georgia district court's decision. On October 15, 2007, the Pennsylvania district court also ruled in favor of the United States, and Hi-Tech promptly appealed. *Id.* On October 7, 2008, the Eleventh Circuit affirmed the decision of the Georgia District Court. *Id.* One week later, the United States raised the defense of issue preclusion in the Third Circuit case for the first time. *Id.*

Despite Hi-Tech's argument that the government "waived [forfeited] the res judicata defense by not asserting it until [a] 'late hour,'" the Third Circuit found that collateral estoppel applied. *Id.* at 175-76. Although the court

noted that "the pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment," the court found no forfeiture by the delay of raising the issue until the resolution of the appeal because of the problems that can be created "if a first judgment, relied on in a second proceeding, is reversed on appeal." *Id.* at 175 (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4433 (2d ed. 2002)).

As recognized in *5 Unlabeled Boxes*, the rule that a decision is final for the purposes of preclusion while that decision is pending appeal creates "[s]ubstantial difficulties." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4433, at 79 (3d ed. 2017) [hereinafter 18A Wright & Miller]. "The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed." *Id.* (footnote omitted); *see also Restatement (Second) of Judgments* § 13, cmt. f. If preclusion is raised while the preclusive judgment is pending appeal, it is possible the final outcome will be "the grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment." 18A Wright & Miller § 4433, at 83. Therefore, there are strong policy reasons supporting a finding of no forfeiture of collateral estoppel when the argument was first raised after the appeal process of the preclusive case was concluded, and we conclude that forfeiture is not appropriate here.

In any event, courts of appeals have discretion to entertain a party's res judicata (including issue preclusion) argument when it is raised for the first time on appeal, especially "when the res judicata defense rests on a judgment entered pending appeal." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4405, at 107–08 (3d ed. 2016) (footnote omitted); *see*

*also 5 Unlabeled Boxes*, 572 F.3d at 175–76.  In cases involving res judicata, "there is more at stake than relitigation between the parties." *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997).  Res judicata also protects the public interest in avoiding inconsistent results and conserving judicial resources.  *Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995).  In some cases, "if the Court were to fail to raise the issue of *res judicata*, then [it] would threaten the public interest in avoiding judicial waste and inconsistent judgments." *Akanthos Cap. Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1272 (11th Cir. 2013) (citing *Arizona*, 530 U.S. at 412–13).  We conclude that there was no forfeiture and, even if there were, we have discretion to excuse any forfeiture.

Second, the Unilocs argue that Motorola waived its issue preclusion argument when, in a Notice of Subsequent Authority made to the district court, Motorola stated:

> On Friday, December 4, 2020, . . . the Northern District of California granted a pending Motion to Dismiss for Lack of Standing by Apple, Inc., . . . because "[Plaintiffs'] patent licensing scheme divested them of exclusionary rights and, thus, of Article III standing."  . . .

> Although not binding on this Court, as the parties have previewed in the past, [the California District Court's decision is] based on roughly the same set of facts as Motorola's pending Motion to Dismiss.

Motorola J.A. 1076 (first set of brackets in original) (quoting *Apple*, 2020 WL 7122617.  The Unilocs argue that "a judgment's 'binding' effect includes *both* precedential *and* preclusive effect."  Motorola Appellants' Reply Br. 17 (emphasis in original).  However, we think, in the context of the Notice of Subsequent Authority, Motorola used "not

binding" only in the sense that the *Apple* decision was not binding as a matter of stare decisis.  We see no waiver.

Third, Uniloc argues that collateral estoppel should not apply because Uniloc lacked the necessary incentive to litigate the *Apple* judgment through appeal because of the settlement opportunity that presented itself.[6]  Uniloc argues: "Given the opportunity to resolve litigation and reduce numerous dockets, Uniloc lacked the 'incentive to litigate' the *Apple* judgment 'to the finish' . . . ."  Blackboard Appellant's Br. 27 (citations omitted).  Essentially, Uniloc argues that collateral estoppel should not apply here because Uniloc lacked the incentive to litigate when confronted with a desirable settlement opportunity.  While it is proper to decline to apply collateral estoppel if a party lacked sufficient incentive to litigate the preclusive case, *see Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*, 515 F.2d 964, 977 (3d Cir. 1975), *amended by* 524 F.2d 1154 (3d Cir. 1975), we find Uniloc's argument unpersuasive.

The standing issues were central to the *Apple* case on appeal.  They were indeed the only issues on appeal.  This is not a situation in which potentially preclusive issues were overshadowed on appeal by issues to which preclusion would not apply, *see Oren Techs., LLC v. Proppant Express Invs. LLC*, 2019-1778, 2021 WL 3120819, at *3 (Fed. Cir. 2021) (per curiam), *i.e.*, a situation in which Uniloc "will be bound in unforeseen ways by half-hearted litigation of an apparently trivial claim."  18A Wright & Miller § 4465.1, at 726 (footnote omitted); *see also Mackris v. Murray*, 397

---

[6]   The settlement agreement resolved not only the *Apple* case but also included an agreement between Uniloc and Apple that other infringement actions would be dismissed; Apple would withdraw inter partes review-related challenges to Uniloc patents; and Apple would dismiss antitrust claims against Uniloc.

F.2d 74, 81 (6th Cir. 1968).  Nor is this a situation in which the issues sought to be precluded were embodied in a decision not subject to immediate appeal.  The fact that Uniloc was able to resolve numerous other disputes in an overall settlement with Apple is not relevant to the determination of whether Uniloc had sufficient incentive to litigate the issues in the *Apple* case itself.

Fourth, to the extent Uniloc argues that collateral estoppel should not apply because the decision in the Apple case is incorrect, this is simply not a proper basis to deny collateral estoppel.  Generally, collateral estoppel cannot be denied because the decision was incorrect.  *See* 18A Wright & Miller § 4465.2, at 750–51 ("[P]reclusion cannot be defeated simply by arguing that the prior judgment was wrong.").[7]

Fifth, Uniloc argues that application of issue preclusion in this case would prejudice Uniloc because Uniloc would have acted differently in settlement had it known that Motorola and Blackboard would assert issue preclusion arguments on appeal.  This argument has no merit.  Parties are charged with knowledge of the law and, particularly in the case of a sophisticated litigant like Uniloc, are presumed to know background legal principles like collateral estoppel.  Uniloc should have known about the

---

[7]    In *Blonder-Tongue Labs.*, the Supreme Court found that estoppel cannot be used against a party unless that party has had "a full and fair chance to litigate" and that a party may not have had that chance if "the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit."  402 U.S. at 333.  That is not alleged to be the situation here.

18                    UNILOC USA, INC. v. MOTOROLA MOBILITY LLC

potential for the *Apple* case to have preclusive effects and cannot argue now that it was ignorant of this possibility.

In conclusion, Uniloc is collaterally estopped from arguing that it did not grant a license, including a right to sublicense, to Fortress, and that the existence of that license deprived Uniloc of standing. We therefore affirm the district court's dismissal of these cases for lack of standing.[8]

**AFFIRMED**

---

[8]    We deny the Unilocs' request to substitute Uniloc 2017 as moot.

# United States Court of Appeals for the Federal Circuit

———————————

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A.,**
*Plaintiffs-Appellants*

**v.**

**MOTOROLA MOBILITY LLC,**
*Defendant-Appellee*

———————————

2021-1555

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01658-CFC, Chief Judge Colm F. Connolly.

--------------------------------------------------

**UNILOC 2017 LLC,**
*Plaintiff-Appellant*

**v.**

**BLACKBOARD, INC.,**
*Defendant-Appellee*

———————————

2021-1795

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:20-cv-00665-CFC, Chief Judge Colm F. Connolly.

———————————

LOURIE, *Circuit Judge*, additional views.

I join the opinion of the court in all respects, except that I believe the paragraph at page 8, lines 11–23, beginning "[w]e recognize there is considerable force to Uniloc's argument that, even if Fortress had been granted a license and an unfettered right to sublicense, Uniloc would have Article III standing," is a regrettable understatement. In my view, there is more than considerable force to the argument; it is clear that Uniloc still had the right to sue unlicensed infringers after it granted the license.

We normally do not opine on issues that are not necessary to decide a case, and our panel soundly affirms the district court on the ground of estoppel. But here, I believe the district court so misconstrued the license issue that something further needs to be said about it.

The district court, respectfully, incorrectly dealt with this issue as one of determining what is an exclusive license, citing cases on whether an exclusive licensee alone has standing to sue without joining the owner of a patent. That is not the case before us. The court began its analysis by citing the *Rite-Hite* decision. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (en banc). But *Rite-Hite* wasn't even a case involving a licensee; it involved distributors. We held that distributors had no standing to pursue an infringement claim because the relevant agreements conveyed rights to sell products covered by the asserted patents and did not convey exclusive patent rights. *See id.* at 1553–54.

The court went on to discuss our *Mars*, *Textile*, and *WiAV* cases, which did involve exclusive licenses and

whether the exclusive licensee could sue. *See Mars, Inc. v. Coin Acceptor, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008) (holding that a subsidiary was not the exclusive licensee of patents, and therefore did not have standing to bring infringement action); *Textile Prods. Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998) (holding that plaintiff was not an exclusive licensee under the asserted patent and thus lacked standing to bring an infringement action); *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1267 (Fed. Cir. 2010) (holding that "an exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject not only to rights in existence at the time of the license but also to future licenses that may be granted only to parties other than the accused").

Those cases are not on point either, as our case here is not concerned with exclusive licenses, but with non-exclusive licenses. The question is whether by granting those licenses the patent owner was precluded from suing parties not licensed. The cited cases do not support that conclusion.

The grant of a non-exclusive license with the right to sublicense, as here, gives the licensee the right to sublicense others. But the patentee still retains the right to sue unlicensed infringers. A non-exclusive license only grants a licensee freedom from suit; it does not divest the licensor of its right to sue or license other parties, or to practice the patent itself. *See* 14B Chisum on Patents 6240 (2022) ("A license may amount to no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention, the patentee reserving the right to grant others the same right.") (internal quotation marks and citation omitted).

It is true that the licensee could preempt such a suit by granting a sublicense, immunizing the purported

infringer.  But that is a far cry from holding that the patent owner, simply by having granted a non-exclusive license with the right to sublicense, loses the power to sue an unlicensed infringer.

Thus, while agreeing in full that Uniloc loses its appeal by being estopped from suing Motorola because it settled its suit with Apple rather than appealing it, it is not because it lost the power to sue by granting Fortress a non-exclusive license with the right to sublicense.